FITE *v.* NORTH RIVER INSURANCE CO.

1. DAMAGES—FIRE INSURANCE—MARKET VALUE.

Where there is no market value for hotel property in the place where it was situated, at the time of its destruction by fire, its real or ordinary cash value at the time of fire should be ascertained, if it can be, from all the testimony as to the cost, uses it has been put to, its age, condition and location.

2. SAME.

The price at which the owner sold a hotel later destroyed by fire is competent evidence, but not conclusive as to the cost of the building.

3. INSURANCE—FIRE INSURANCE—EVIDENCE—SUFFICIENCY.

On a bill to correct the form of certain fire insurance policies and to enforce them as corrected, where all the policies were issued by an agent of the insurers, and previous to the complete destruction of the building a small fire loss had been adjusted by the insurers' agent, and the latter had some knowledge of the value of the property, and there was no evidence of fraud and deceit practiced by plaintiff, evidence *held*, to show that the property was of the claimed value.

Appeal from Lapeer; Williams, J. Submitted October 12, 1917. (Docket No. 113.) Decided December 27, 1917.

Bill by Norman J. Fite and another against the North River Insurance Company and others to correct the form of certain policies of fire insurance, and to enforce them. From a decree for plaintiffs, they appeal. Modified, and affirmed.

*W. E. Brown,* for plaintiffs.

*De Foe & Converse,* for defendants.

OSTRANDER, J. The bill is filed to correct the form of certain policies of insurance, and to enforce them.

The property insured was a hotel building and barn and certain outbuildings, with their contents. The court found the cash value of the hotel building to be $7,186.36, and the total damage to plaintiffs covered by the insurance $8,386.36. For this sum a decree was entered, which was apportioned to six policies of insurance issued by the defendants—four by the North River Insurance Company, and two by the German Fire Insurance Company. The recovery was apportioned, in the decree, between the plaintiffs. Plaintiffs appeal, asserting that the court was in error in fixing the cash value of the building, and that the evidence requires the finding that the loss on buildings was $9,114.18. The insurance carried on the personal property was less than the loss, and that carried on buildings was greater than the sum found due, and greater than the sum claimed by the plaintiffs. The court filed an opinion, in which the method of arriving at the indemnity to be paid is stated as follows:

"I find, therefore, that at the time of the fire the hotel property, including the personal property and the adjoining outlots, was worth $10,500. The personal property included in the proofs of loss was $2,-513.64. Of this $500 was new, having been purchased after the hotel property was purchased, so that the personal property in the hotel at the time of the contract was $2,013.64. Deducting that from $10,000 leaves the value of the real estate at the time of the purchase, and at the time of the fire, at $7,986.36. I find the salvage to be, the barn and lot $350, five lots $250, the woodshed $100, and the icehouse $100, making $800, and deducting this $800 from $7,986.36 leaves the amount of the loss caused by the burning of the hotel building $7,186.36. To this I add $1,000, the amount of the insurance on the personal property, and $200, the amount of the insurance on the bar fixtures, or $1,200, making the total damage which the plaintiffs sustained by reason of the fire $8,386.36, for which amount I find the defendants in the case liable according to the terms of the six policies of insurance."

This computation is explained by what precedes it in the opinion and by reference to a contract for the purchase and sale of certain real estate, including the buildings insured. The property is described in the contract as lots 10, 9, 8, 7, south half of lots 5 and 6, and east 30 feet of lot 3, Cummings' addition to the village of Otter Lake, and the consideration to be paid therefor was $10,000. The court said:

"The village of Otter Lake, where this property is situated, is a small country village, and this, I think, was the only hotel in the village. This property was sold by Mr. Sherman to Mr. Fite on the 7th of March, 1914, for $10,000, payable $2,000 on delivery of the contract, and $150 the first of each month thereafter. The plaintiff has offered testimony showing what it would cost to erect that building new at Otter Lake, including its fixtures, and lighting and heating appliances. That price is considerably more than the price at which Mr. Sherman contracted to sell the property to Mr. Fite. It also appears that the depreciation of the property from the time it was built, some 25 years ago, would be about 10 per cent. In the estimate made by the contractors they gave what was included for heating and lighting, and I think some other items from bids that they received from persons doing such work, and not from personal knowledge of the value of the work. That part of their testimony would possibly not be competent, and would not be considered by the court, but I have not considered that. I am, however, persuaded to believe that the best evidence that is in the case as to the value of the property was the amount that Mr. Sherman sold it for to Mr. Fite, viz., $10,000. The property certainly has not increased in value since that time. The contract provides that if Lapeer county should go dry within four years from the date of the contract, that Mr. Fite would be relieved from making his monthly payments for four years; that is, those monthly payments would simply be deferred. It was not a discount on the contract price, but merely a longer deferring of the monthly payments. I am satisfied from that fact that the parties, at least, contemplated that

the fact that this property would be used and could be used as a saloon and bar materially enhanced its value, and that was the reason that induced them to so modify the contract.  While I am not sure that it is a material matter to be considered by the court, I am satisfied that a hotel to cost more than $10,000 without a bar in the village of Otter Lake would not be a profitable investment, and that this hotel having burned, no one would think of building as expensive a hotel as that in the village of Otter Lake.  I think I may also take notice of the fact that in Lapeer there are now three or four vacant hotel buildings made vacant by the changed condition of affairs as to the sale of liquor, and because of the fact that a bar may not now be maintained in either of those places they are practically closed and of comparatively little value."

There had been a prior loss by fire and something had been paid on account thereof by the insurers. Plaintiffs, claiming that the evidence shows a loss in excess of the insurance carried, computed the sum which should be found to be due as follows:

| | |
|---|---|
| Total insurance on buildings................ | $9,300 00 |
| Former payments and $100 not burned.....: | 185 82 |
| | $9,114 18 |
| Due on personal........................... | 1,200 00 |
| | $10,314 18 |

Defendants introduced no testimony.  The testimony for plaintiffs tended to prove that the hotel was on lots 8 and 10, the barn on the east 30 feet of lot 3, across the street from the hotel.  The barn did not burn, nor did a woodshed worth $45 to $50, an icehouse worth $100, a pumphouse worth $25.  The barn and lot were worth $350, and the vacant lots $350. No witness testified to the value of the hotel building at the time of the fire, but one of the plaintiffs testified that his estimate of the total loss sustained, on personal and real property, was $17,500.  There was also testimony tending to prove that the hotel was in good

condition and repair. A witness who said he obtained measurements of the hotel building from one of the plaintiffs multiplied the cubic contents by 16 (16 cents a cubic foot), and his estimate of what it would cost to replace it was $15,968. Another witness estimated that it would cost $12,078.19 to replace the building without any contractor's profit, and still another estimated the cost of replacing it at $14,700.

It seems to be conceded that there is no market value for such property in the place where it is situated, and therefore its real or ordinary cash value at the time of the fire should be ascertained, if it can be, from all the testimony as to the cost, uses it has been put to, its age, condition, and location. *Close* v. *Railroad Co.*, 169 Mich. 401 (135 N. W. 346); *William R. Roach & Co.* v. *Blair*, 190 Mich. 11 (155 N. W. 696). Unfortunately, there is here no evidence of what the building cost. The price at which the owner contracted to sell it, while competent evidence, is not controlling, since he might have made a good or a bad bargain. We have no estimate of its value at the time of the fire from any one competent to make such an estimate.

There is, however, other testimony of considerable probative value in this connection which, in my opinion, strongly supports the contention of the appellants. It is the testimony of facts existing before and at the time of the fire, before disagreement had arisen. The policies of insurance were all of them issued by an agent of the insurers residing at Otter Lake, upon the dates, respectively, March 4, 1913, November 1, 1913, March 12, 1914, May 5, 1914, September 28, 1914, March 20, 1915. The loss occurred June 3, 1915. A small fire occurred March 21, 1915, and the loss was adjusted. It may be assumed that the agent had some knowledge of the value of the property. There is no evidence of any deceit intended or practiced by the

insured. It should not be assumed that the sum deliberately put at risk by the insurers was equal to the cash value of the property in the estimation of the agent. His estimate of its value, so evidenced, may, in the state of this record, be considered with other testimony for plaintiffs, and, when considered, is enough, in my opinion, to warrant a disagreement with the conclusion of the learned trial judge.

The decree should be modified by adding thereto the sum of $1,927.82 as loss and damage to the buildings and by a proper apportionment of this additional sum to the defendants respectively, and to the plaintiffs, and, as modified, affirmed, with costs to appellants.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.