VAN KEULEN & WINCHESTER LUMBER CO. v. MANISTEE & NORTHEASTERN RAILROAD CO.

1. CARRIERS—INITIAL CARRIER—CONNECTING CARRIER—FAILURE TO HEED STOP-OVER INSTRUCTIONS.

Where a shipment of lumber was billed through to destination with instructions on the waybills to stop the car at B. for kiln drying, and the connecting carrier received the shipment in good order and also the waybills, but failed to heed the stop-over instructions, the error was that of the connecting carrier, and it alone is responsible, its claim that the manner of billing contributed to the error being without merit.

2. DAMAGES—TORTS—MEASURE OF DAMAGES.

In an action of tort the wrongdoer is liable for all injuries resulting directly from the wrongful acts whether they

could or could not have been foreseen by him, provided the particular damages in respect to which he proceeds are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as might reasonably have been anticipated; but remote, contingent or speculative damages are not allowable. .

3. CARRIERS—MEASURE OF DAMAGES.

The damages recoverable against a carrier for failure to heed stop-over instructions to allow a shipment of lumber to be kiln dried are limited to the excess cost of kiln drying at destination over what it would have cost at stop-over point, and do not include damages resulting from sawing into short lengths by consignee before it noticed that the lumber was not kiln dried, since such damages are too remote, and consignee was guilty of contributory negligence in failing to make proper inspection before sawing.

Error to Kent; Brown (William B.), J. Submitted January 9, 1923. (Docket No. 12.) Decided April 27, 1923.

Case by the Van Keulen & Winchester Lumber Company against the Manistee & Northeastern Railroad Company and James C. Davis, director general of railroads, operating the Pere Marquette Railway Company, for damages to lumber. Judgment for plaintiff. Defendants bring error. Reversed as to defendant Manistee & Northeastern Railroad Company, and affirmed conditionally as to defendant Davis.

*Travis, Merrick, Warner & Johnson,* for appellant Manistee & Northeastern Railroad Co.

*Norris, McPherson, Harrington & Waer (Williams, Shields & Seaton,* of counsel), for appellant Davis.

*Francis L. Williams,* for appellee.

BIRD, J. Plaintiff is a lumber dealer and has its office in the city of Grand Rapids. On November 4,

1918, it delivered to the defendant Manistee & Northeastern Railroad Company, at Interlochen, two cars of maple lumber consigned to the Merrimac Wood Heel Company at Haverhill, Massachusetts. The cars were to go via Whitehall and Big Rapids and be stopped at Big Rapids for kiln drying. Bills of lading were issued to the shipper and waybills to accompany the cars to their destination were prepared, which showed across the face of each the following instruction:

"*Stop this car at A. L. Dennis Salt & Lumber Company, Big Rapids, Michigan, for kiln drying.*"

The cars were moved under these instructions by the Manistee & Northeastern Railroad Company from Interlochen to Kaleva, its junction point with the Pere Marquette Railway, and delivered to it in good order. The waybills were turned over to the Manistee & Northeastern agent at Kaleva by the conductor and by him delivered to the agent of the Pere Marquette, and the agent of the Pere Marquette delivered them to the Pere Marquette conductor. Instead of continuing south on its line to Whitehall the Pere Marquette stopped the cars at Baldwin, and from there they went east to Saginaw, and did not go through Big Rapids at all. The cars went through on the other lines of railway without incident to their destination. The lumber was kiln dried after it reached its destination at a considerable increase in expense. Plaintiff sued defendants to recover its damage by reason of the failure to stop the cars at Big Rapids and because of their failure to notify the consignee that the lumber had not been kiln dried. The case was tried before the trial court without the aid of a jury, and damages were assessed in favor of plaintiff and against both defendants in the sum of $2,173.13. Both defendants assign error.

1. The Manistee & Northeastern Company insist that the proceedings should have been dismissed

against it, as it delivered the cars in good order to the Pere Marquette with full instructions indorsed on the waybills. The trial court was of the opinion that the Pere Marquette was responsible for the failure to stop the cars at Big Rapids, but that the manner of billing them contributed to the negligence of the Pere Marquette and, therefore, held both roads responsible for the error. This view of the trial court was induced by the testimony of Mr. Thomas W. Avis, division freight agent of the Pere Marquette Railway. He suggested in his testimony that the cars were not properly billed by the Manistee & Northeastern agent; that they should have been billed direct to Big Rapids, with no notation as to Haverhill, Massachusetts. The freight charges from Interlochen to Big Rapids should then have been paid, and the receipt deposited with the agent at Big Rapids. After the lumber was dried and ready to be forwarded, the agent at Big Rapids would have billed them from point of origin to destination at the through rate. The trial court concluded if this were the way prescribed by the tariffs on file, and that the Manistee & Northeastern Railroad did not conform thereto, it was in some degree responsible for the error.

The testimony shows that the through rate and stop-over privilege at Big Rapids was accorded to shippers, and it was a practice that the agents and train operatives were familiar with. The notation on the waybill was ample notice to the Pere Marquette agent at Kaleva that the car was to be stopped at Big Rapids. It was ample notice to the conductor who took the cars from Kaleva to Baldwin, and it was like notice to the conductor who handled the cars between Baldwin and Saginaw, but none of them heeded it. But it is said the through billing with a stop-over was not in accordance with the rule of the tariffs on file. We are not informed as to that fact,

as we find no tariff sheet in the record. There was some oral proof as to the written tariff, but this testimony was disputed by one of plaintiff's witnesses, who testified that this was not an uncommon way of handling through cars. Whatever the truth may be in regard to that, we do not deem it very important. Whether the cars were billed through and a stop-over given, or whether there was a local billing from Interlochen to Big Rapids and from there a through rate to destination is not of much moment because the question involves no preference of rate or privilege. It simply involves a question of two modes of operation accomplishing the same thing, neither one of which was of any importance to the shipper. Besides, Mr. Avis testified that when the Pere Marquette agent at Kaleva discovered the manner of billing he should have held the cars and wired his office and he would have arranged to forward them to Big Rapids, by suppressing the through waybill and fixing a transit rate from Interlochen to Big Rapids, and later forwarded them on the through rate. If this duty had been followed the through rate would have worked out just the same. There was some proof by Mr. Fitzgibbons, who had been connected for eleven years with the Dennis Salt & Lumber Company, that the through billing with a stop-over at Big Rapids was the way much of the business was handled by the Pere Marquette. It appears to us that the error was made by the Pere Marquette employees and that company must, therefore, suffer the consequences.

2. The Pere Marquette takes the position that if it is liable it is only liable for the difference in cost of drying the lumber in Massachusetts and the cost of drying it at Big Rapids, which was the sum of $294.45. Plaintiff contends that defendant was negligent in not advising the consignee that the lumber had not been kiln dried. Before the consignee learned

of it, it sawed up the lumber into four-foot lengths. By increasing the number of ends the checking and warping so increased that the damage was greatly increased. The trial court took plaintiff's view of the damages and defendant assigns error and contends such damages were never in contemplation when the parties made the contract.

The general rule of damages in an action of tort is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, whether they could or could not have been foreseen by him, provided the particular damages in respect to which he proceeds are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated. Remote, contingent, or speculative damages will not be considered in conformity to the general rule above laid down. To render a wrongdoer liable in damages, where the connection is not immediate between the injurious act and the consequences, such nearness in the order of events and closeness in the relation of cause and effect must subsist, as that the influence of the injurious act would predominate over that of other causes, and concur to produce the consequence or be traceable to those causes. 13 Cyc. p. 28.

The question then arises whether the damages insisted upon by plaintiff are proximate or remote. The rule for testing this question is laid down, as follows:

"It may be stated, as a general rule, however, that where the result of an unlawful act is a natural one and one that would naturally flow from the act done, it is not remote but proximate. If, upon the contrary, the damages complained of would not naturally or usually flow from the negligent act, but were brought about by some unforeseen casualty, then they would be remote." 13 Cyc. p. 27.

Tested by this rule it appears to us that the proximate damages which resulted from defendant's failure to stop the car at Big Rapids was the excess cost of kiln drying in Massachusetts over what it would have cost at Big Rapids. This was the damage which naturally and necessarily flowed from the negligent act of the defendant. The damages which resulted from sawing the lumber into four-foot lengths and the ends subsequently checking, appear to us to be the remote damages. It was a damage which did not naturally or necessarily flow from the wrongful act of defendant.

These damages were unusual and were brought about by the peculiar use which was to be made of the lumber, but they do not necessarily flow from defendant's negligent act. The proximate damages spoken of would always be the result of such negligence. The other damages might or might not ensue depending upon the peculiar use that was to be made of the lumber. It does not appear that the defendants were informed to what use the lumber was to be put. Plaintiff counts on defendant's failure to notify the consignee that the lumber was not kiln dried. We are unable to see how this duty rested upon defendant. The defendant was not supposed to know that the consignee would use the lumber when it was unfit for its use. These damages appear to us to be too remote to be considered in the case as an element of damage.

We are also impressed that there is another reason why these damages should be rejected. Mr. Fred Calkins, a lumber inspector, who was one of plaintiff's witnesses, gave it as his opinion that a man with experience could tell, upon inspection, whether or not the lumber was kiln dried. If we are to assume this as true, then the inspector of the consignee should have, by reasonable inspection, discovered the fact that

the lumber was not kiln dried before it was sawed up. This would render the consignee guilty of contributory negligence in sawing up the lumber before it had been kiln dried.

The judgment against the Manistee & Northeastern Railroad Company is reversed with no new trial. The judgment against James C. Davis, as director general, will be reduced from $2,173.13 to $294.45, plus interest, and affirmed for that amount, on condition that plaintiff files in the trial court, within thirty days from the filing of this opinion, its consent to reduce the judgment as aforesaid. If such consent be not filed, then the judgment against James C. Davis, as director general, will be reversed and a new trial ordered. In neither event will either plaintiff or James C. Davis, as director general, recover his costs, in this court.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred