# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## PRICE v HIGH POINTE OIL COMPANY, INC

Docket No. 143831. Argued November 15, 2012 (Calendar No. 1). Decided March 21, 2013.

Beckie Price brought an action in the Clinton Circuit Court against High Pointe Oil Company, Inc., claiming, among other things, noneconomic damages for the mental anguish, emotional distress, and psychological injuries that she sustained when High Pointe negligently pumped 400 gallons of fuel oil into the basement of her house. The incident created an environmental hazard that required the razing of the house. Before the jury trial, High Pointe moved for summary disposition, in part on the issue of noneconomic damages, arguing that noneconomic damages resulting from real property damage were not compensable. The court, Randy L. Tahvonen, J., denied that part of High Pointe's motion, concluding that noneconomic damages could be recovered in a negligence action. The jury awarded Price $100,000 for noneconomic damages, after which High Pointe moved for judgment notwithstanding the verdict and remittitur. The court denied the motion and High Pointe appealed. The Court of Appeals, BECKERING, P.J., and FORT HOOD and STEPHENS, JJ., affirmed, concluding that a plaintiff may recover mental anguish damages naturally flowing from damage to or the destruction of real property. 294 Mich App 42 (2011). The Supreme Court granted High Pointe's application for leave to appeal. 491 Mich 870 (2012).

In an opinion by Justice MARKMAN, joined by Chief Justice YOUNG and Justices MARY BETH KELLY and ZAHRA, the Supreme Court *held*:

Michigan common law has long provided that the appropriate measure of damages in cases involving the negligent destruction of property is the cost of replacement or repair of the property. Because that rule is sound, any change in the rule must come by legislative alteration.

1. The common-law rule with respect to damages recoverable in an action alleging the negligent destruction of property is that if the injury is permanent or irreparable, the measure of damages is the difference in the property's market value before and after the injury, but if the injury is reparable and the expense of making repairs is less than the value of the property, the measure of damages is the cost of making repairs. Because replacement and repair costs reflect economic damages, the logical implication of this rule is that the measure of damages excludes noneconomic damages. No previous case in the history of Michigan's common law has approvingly discussed the recovery of noneconomic damages for the negligent destruction of property. Further, recent Court of Appeals precedent has disallowed recovery of damages for emotional injuries suffered as a consequence of personal property damage. There was no legally

relevant basis that would logically justify prohibiting the recovery of noneconomic damages for the negligent destruction of personal property but allow it for the negligent destruction of real property.

2.  A common-law rule remains the law until modified by the Michigan Supreme Court or the Legislature.  Alteration of the common law by the Court should be approached cautiously with the fullest consideration of public policy and should not occur through sudden departure from longstanding legal rules.  While the destruction of property or property damage will often engender considerable mental distress, the present rule denying recovery for that distress is rational and justifiable as a matter of reasonable public policy.  Given the lack of any compelling argument for altering the common law, retention of the rule was appropriate.

Judgment of the Court of Appeals reversed and case remanded to the trial court for entry of summary disposition in High Pointe's favor.

Justice CAVANAGH took no part in the decision of this case because of a familial relationship with counsel of record.

Justices MCCORMACK and VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED MARCH 21, 2013

STATE OF MICHIGAN

SUPREME COURT

BECKIE PRICE,

        Plaintiff-Appellee,

v                                                    No. 143831

HIGH POINTE OIL COMPANY, INC,

        Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH (except CAVANAGH, MCCORMACK, and VIVIANO, JJ.)

MARKMAN, J.

The issue in this case is whether noneconomic damages are recoverable for the negligent destruction of real property. No Michigan case has ever allowed a plaintiff to recover noneconomic damages resulting solely from the negligent destruction of property, either real or personal. Rather, the common law of this state has long provided that the appropriate measure of damages in cases involving the negligent destruction of property is simply the cost of replacement or repair of the property. We are not persuaded of the need for change and therefore continue to adhere to this rule.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for entry of summary disposition in defendant's favor.

## I.  FACTS AND HISTORY

In 1975, plaintiff and her now ex-husband built a house in DeWitt, Michigan.  The house was originally heated by an oil furnace located in the basement, but in 2006 plaintiff replaced the oil furnace with a propane furnace.  Plaintiff canceled her contract with defendant oil company's predecessor when the propane furnace was installed.  Although the oil furnace was removed, the oil fill pipe remained.

Somehow, in November 2007, plaintiff's address was placed on defendant's "keep full list."  True to the name of the list, while plaintiff was at work, defendant's truck driver pumped nearly 400 gallons of fuel oil into plaintiff's basement through the oil fill pipe before realizing his mistake and immediately calling 911.  Plaintiff's house and many of her belongings were destroyed.  Between defendant's and plaintiff's insurers, the site was remediated, a new house was built on the property in a different location, plaintiff's personal property was cleaned or replaced, and plaintiff was reimbursed for all temporary-housing-related expenses.   It is undisputed that plaintiff was fully compensated for her economic losses.

Nevertheless, plaintiff filed suit in August 2008, alleging claims for negligence, gross negligence, negligent infliction of emotional distress, nuisance, trespass, and a private claim under the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq*.  However, plaintiff's only claim to survive to trial was for the recovery of noneconomic damages for defendant's negligent destruction of her real property.  After

trial and over defendant's objection, a jury found in favor of plaintiff in the amount of $100,000 for past noneconomic damages. Defendant moved for judgment notwithstanding the verdict and remittitur, arguing that plaintiff had failed to present sufficient proofs to support the verdict. The trial court denied the motion, and defendant appealed. The Court of Appeals affirmed in a published decision, explaining:

> Noneconomic damages are generally recoverable in tort claims, and we are not convinced that noneconomic damages stemming from damage to or destruction of real property must or should be excepted from that general rule. We conclude that in negligence actions, a plaintiff may recover mental anguish damages naturally flowing from the damage to or destruction of real property. [*Price v High Pointe Oil Co, Inc*, 294 Mich App 42, 60; 817 NW2d 583 (2011).]

Defendant applied for leave to appeal in this Court. We granted leave and subsequently heard oral argument. *Price v High Pointe Oil Co, Inc*, 491 Mich 870 (2012).

## II. STANDARD OF REVIEW

Whether noneconomic damages are recoverable for the negligent destruction of real property presents a question of law, which this Court reviews de novo. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

## III. ANALYSIS

The question in this case is whether noneconomic damages are recoverable for the negligent destruction of real property. Absent any relevant statute, the answer to that question is a matter of common law.

### A. COMMON LAW

As this Court explained in *Bugbee v Fowle*, the common law "'is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what

3

is right and just between individuals in respect to private disputes[.]'" *Bugbee v Fowle*, 277 Mich 485, 492; 269 NW 570 (1936), quoting *Kansas v Colorado*, 206 US 46, 97; 27 S Ct 655; 51 L Ed 956 (1907). The common law, however, is not static. By its nature, it adapts to changing circumstances. See Holmes, *The Common Law* (Mineola, New York: Dover Publications, Inc., 1991), p 1 (noting that the common law is affected by "[t]he felt necessities of the time, the prevalent moral and political theories, [and] intuitions of public policy" and that it "embodies the story of a nation's development through many centuries"). And as this Court stated in *Beech Grove Investment Co v Civil Rights Comm*:

> It is generally agreed that two of the most significant features of the common law are: (1) its capacity for growth and (2) its capacity to reflect the public policy of a given era. . . .
>
> *   *   *
>
> "The common law does not consist of definite rules which are absolute, fixed, and immutable like the statute law, but it is a flexible body of principles which are designed to meet, and are susceptible of adaption to, among other things, new institutions, public policies, conditions, usages and practices, and changes in mores, trade, commerce, inventions, and increasing knowledge, as the progress of society may require. So, changing conditions may give rise to new rights under the law . . . ." [*Beech Grove Investment Co v Civil Rights Comm*, 380 Mich 405, 429-430; 157 NW2d 213 (1968), quoting 15A CJS, Common Law, § 2, pp 43-44.]

The common law is always a work in progress and typically develops incrementally, i.e., gradually evolving as individual disputes are decided and existing common-law rules are considered and sometimes adapted to current needs in light of changing times and circumstances. *In re Arbitration Between Allstate Ins Co & Stolarz*, 81 NY2d 219, 226; 597 NYS2d 904; 613 NE2d 936 (1993) (noting that the common law evolves through the

4

"incremental process of common-law adjudication as a response to the facts presented");[1] see also *People v Aaron*, 409 Mich 672, 727; 299 NW2d 304 (1980) ("Abrogation of the felony-murder rule is not a drastic move in light of the significant restrictions this Court has already imposed. Further, it is a logical extension of our decisions . . . ."); *Woodman v Kera LLC*, 486 Mich 228, 267-268; 785 NW2d 1 (2010) (MARKMAN, J., concurring in part and dissenting in part).

The common-law rule with respect to the damages recoverable in an action alleging the negligent destruction of property was set forth in *O'Donnell v Oliver Iron Mining Co*, 262 Mich 470; 247 NW 720 (1933). *O'Donnell* provides:

> "If injury to property caused by negligence is permanent or irreparable, [the] measure of damages is [the] difference in its market value before and after said injury, but if [the] injury is reparable, and [the] expense of making repairs is less than [the] value of [the] property, [the] measure of damages is [the] cost of making repairs." [*Tillson v Consumers Power Co*, 269 Mich 53, 65; 256 NW 801 (1934), quoting *O'Donnell*, 262 Mich at 471 (syllabus).][2]

---

[1] See also Kestin, *The bystander's cause of action for emotional injury: Reflections on the relational eligibility standard*, 26 Seton Hall L R 512, 512 (1996) ("Growth in the common law is incremental, often scarcely noticeable in the short run, but inexorable when viewed in the long term."); *Davis v Moore*, 772 A2d 204, 238 (DC, 2001) (Ruiz, J., dissenting) ("It cannot be forgotten that the incremental pace at which common law develops, coupled with the increasing importance of statutory law, ensures that cases where truly 'new' rules of common law are announced . . . will not frequently occur.").

[2] *Tillson* quoted *O'Donnell*'s syllabus. The portion of the opinion from which the statement in the syllabus was derived provided:

> As the case must go back for a new trial, on account of the errors pointed out, we also call attention to another alleged error. The court instructed the jury that, if it found that the injury to plaintiff's property was caused by defendant's negligence, the damages should represent the difference between the market value of the house at the date of the injury

Accord *William R Roach & Co v Blair*, 190 Mich 11, 16-17; 155 NW 696 (1916) (approving as being in accordance with the "general rule" the trial court's articulation of damages as "'the fair cash value at said time and place of said property which was destroyed by said fire, and the diminution in value of property injured and not destroyed'"); *Davidson v Michigan C R Co*, 49 Mich 428, 431; 13 NW 804 (1882) ("[I]n the case of domestic animals injured, the proper rule of damages, as in the case of other perishable chattels, should usually be the reduced value at the time. . . . [T]he difference between the value before and after the accident will enable the owner to be fully indemnified."); *Guzowski v Detroit Racing Ass'n, Inc*, 130 Mich App 322, 328; 343 NW2d 536 (1983) (citing *Davidson* for the conclusion that the proper measure of damages was the difference in market value of a horse after it was injured from its

---

and that value it would have had if the property had remained undamaged. This is the measure of recovery only where the injury is permanent. No instruction was given as to what the measure of damages should be in case the jury found the injuries were reparable, nor did defendant make any showing as to the cost of full restoration and repair of the house. Apparently, plaintiff tried the case on the theory that the damage was permanent and irreparable. Nevertheless, if defendant shows that the property can be repaired and restored to the condition it would have been in had it not been damaged by the subsidence, and also gives proper testimony as to the cost of the repairs, the court should make it clear to the jury that the question as to the permanency of the damage, and, if reparable, the cost of repairs, is one of fact for them to decide, if they conclude that defendant was responsible for the damages. [*O'Donnell*, 262 Mich at 476-477, going on to cite *Berkey v Berwind-White Coal Mining Co*, 229 Pa 417, 428; 78 A 1004 (1911).]

6

preinjury market value); *Fite v North River Ins Co*, 199 Mich 467, 471; 165 NW 705 (1917) (indicating the primacy of market value in assessing damages).

Michigan common law has continually followed the *O'Donnell* rule. See *Tillson*, 269 Mich at 65; *Jackson Co Rd Comm'rs v O'Leary*, 326 Mich 570, 576; 40 NW2d 729 (1950); *State Hwy Comm'r v Predmore*, 341 Mich 639, 642; 68 NW2d 130 (1955); *Wolverine Upholstery Co v Ammerman*, 1 Mich App 235, 242; 135 NW2d 572 (1965); *Bayley Products, Inc v American Plastic Products Co*, 30 Mich App 590, 598; 186 NW2d 813 (1971) ("It is the settled law of this state that the measure of damages to real property, if permanently irreparable, is the difference between its market value before and after the damage."); *Baranowski v Strating*, 72 Mich App 548, 562; 250 NW2d 744 (1976); *Bluemlein v Szepanski*, 101 Mich App 184, 192; 300 NW2d 493 (1980); *Strzelecki v Blaser's Lakeside Indus of Rice Lake, Inc*, 133 Mich App 191, 193-194; 348 NW2d 311 (1984); see also *People v Hamblin*, 224 Mich App 87, 94; 568 NW2d 339 (1997) (analogizing to civil property-loss cases, including *Baranowski*, in order to determine how to measure damages in a criminal case); 2 Michigan Law of Damages & Other Remedies (3d ed), § 19.18, p 19-13 ("[T]he measure of damages for injury to real property generally is the difference between the market value of the property before and after the injury to the property."); 7 Michigan Civil Jurisprudence (2009 rev), § 50, p 379 ("The measure of damages for negligent injury to real property, if permanent and irreparable is the difference between its market value before and after the damage."). Accordingly, the long-held common-law rule in Michigan is that the measure of damages

7

for the negligent destruction of property is the cost of replacement or repair.[3] Because

replacement and repair costs reflect *economic* damages, the logical implication of this

---

[3] A substantially similar, market-based approach to damages is employed by a number of other states, for example:

(1) Alabama: "The proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage." *Birmingham Coal & Coke Co, Inc v Johnson*, 10 So 3d 993, 998 (Ala, 2008) (citations and quotation marks omitted).

(2) Colorado: "In cases involving damage to property, . . . the ordinary measure of damages is the diminution of market value of the property." *Goodyear Tire & Rubber Co v Holmes*, 193 P3d 821, 827 (Colo, 2008).

(3) Georgia: "[A]s a general rule the measure of damages in actions for real property is the difference in value before and after the injury to the premises[.]" *Royal Capital Dev, LLC v Maryland Cas Co*, 291 Ga 262, 264; 728 SE2d 234 (2012) (citation omitted).

(4) Idaho: "If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction . . . ." *Nampa & Meridian Irrigation Dist v Mussell*, 139 Idaho 28, 33; 72 P3d 868 (2003) (citation and quotation marks omitted).

(5) Kansas: "The ordinary measure of damages to real property is the difference in value immediately before and after the damage and, in the event of total destruction, the fair market value at the time of the destruction." *Evenson v Lilley*, 295 Kan 43, 52; 282 P3d 610 (2012).

(6) New Mexico: "[T]he market value for lost or destroyed property is the proper measure of damages . . . ." *Castillo v Las Vegas*, 2008 NMCA 141, ¶ 31; 145 NM 205, 214; 195 P3d 870 (NM App, 2008).

(7) Oklahoma: "[W]here damages are of a permanent nature, the measure of damage is the difference between the actual value immediately before and immediately after the damage is sustained." *Schneberger v Apache Corp*, 1994 OK 117, ¶ 10; 890 P2d 847, 849 (Okla, 1994) (citations and quotation marks omitted).

rule is that the measure of damages excludes *noneconomic* damages and the latter are not recoverable for the negligent destruction of property.[4] See also 4 Restatement Torts, 2d,

---

(8) Pennsylvania: "The proper measure of damages in a case where the injury to the property was permanent is the market value of the property immediately before the injury." *Oliver-Smith v Philadelphia*, 962 A2d 728, 730 (Pa Cmwlth, 2008).

(9) South Carolina: "[T]he general rule is that in case of an injury of a *permanent* nature to real property . . . the proper measure of damages is the diminution of the market value by reason of that injury . . . ." *Yadkin Brick Co, Inc v Materials Recovery Co*, 339 SC 640, 645; 529 SE2d 764 (SC App, 2000) (citation and quotation marks omitted).

(10) Texas: "As a rule, [the recoverable value of property] is measured by the property's market value or the cost of repairing it." *City of Tyler v Likes*, 962 SW2d 489, 497 (Tex, 1997).

[4] A number of other states also preclude the recovery of noneconomic damages for the negligent destruction of property, for example:

(1) Alabama: "[P]laintiffs cannot recover for mental anguish or emotional distress unless they suffered physical injury or were in the 'zone of danger.'" *Birmingham*, 10 So 3d at 999.

(2) Alaska: "The general rule is that where a tortfeasor's negligence causes emotional distress without physical injury, such damages may not be awarded." *Hancock v Northcutt*, 808 P2d 251, 257 (Alas, 1991).

(3) Maryland: "[A] plaintiff cannot ordinarily recover for emotional injuries sustained solely as a result of negligently inflicted damage to the plaintiff's property." *Dobbins v Washington Suburban Sanitary Comm*, 338 Md 341, 351; 658 A2d 675 (1995).

(4) Nevada: "[T]he better rule is to allow recovery only in cases which pertain to emotional distress arising from harm to another person, and not in cases, such as the one before us, which pertain to emotional distress arising from property damage." *Smith v Clough*, 106 Nev 568, 569-570; 796 P2d 592 (1990).

(5) New Mexico: "[A] plaintiff may not recover for emotional distress based solely on a claim for negligent damage to property." *Castillo*, 2008 NMCA at ¶ 21; 145 NM at 210.

§ 911 comment e, p 475 ("Compensatory damages are not given for emotional distress caused merely by the loss of . . . things . . . ."); 1 Dobbs, Law of Remedies (2d ed, 1993), Damages-Equity-Restitution, § 5.15(1), p 876 ("In general, the owner of damaged property cannot recover damages for emotional distress as an element of damage to the property."); 22 Am Jur 2d, Damages, § 255, pp 238-239; 38 Am Jur 2d, Fright, Shock, Etc, § 19, p 31 ("Subject to some exceptions, generally, under ordinary circumstances, there can be no recovery for mental anguish suffered by a plaintiff in connection with an injury to his or her property."); 2 Restatement Torts, 2d, § 313, pp 113-115 (implying that damages for emotional distress are not recoverable in cases concerning negligently inflicted injury to property);[5] 4 Restatement Torts, 2d, § 911 comment e, p 474 ("Even

---

(6) New York: Damages for mental anguish are not recoverable absent "competent evidence of contemporaneous or consequential physical harm[.]" *Iannotti v City of Amsterdam*, 225 AD2d 990, 990; 639 NYS2d 537 (NY App, 1996).

(7) Oklahoma: "[E]motional distress as a consequence of an intentional tort is distinguishable from distress resulting from breach of contract or negligence, which requires a showing of physical injury." *Cleveland v Dyn-A-Mite Pest Control, Inc*, 2002 OK Civ App 95, ¶ 52; 57 P3d 119, 131 (2002) (citation and quotation marks omitted).

(8) Oregon: "[P]sychic and emotional injuries" are not recoverable where the "plaintiff suffered no physical injury from [the] defendants' alleged negligence and [where the plaintiff] has not shown that [the] defendants' conduct was anything more than negligent[.]" *Hammond v Central Lane Communications Center*, 312 Or 17, 20; 816 P2d 593 (1991).

(9) Texas: "[M]ental anguish based solely on negligent property damage is not compensable as a matter of law." *Likes*, 962 SW2d at 497.

[5] Section 313 of the Restatement Second of Torts concerns "Emotional Distress Unintended." It provides:

10

when the subject matter has its chief value in its value for use by the injured person, if the thing is replaceable, the damages for its loss are limited to replacement value, less an amount for depreciation."); 28 ALR2d 1070, § 8, p 1093 ("In simple negligence cases involving personal property, the courts have been reluctant to authorize the allowance of damages for mental anguish or disturbance allegedly caused by the defendant's wrongful acts.").

Lending additional support to this conclusion is the simple fact that, before the Court of Appeals' opinion below, *no* case ever in the history of the Michigan common law has approvingly discussed the recovery of noneconomic damages for the negligent destruction of property. Indeed, no case has even broached this issue except through the

---

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in *Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person*, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other. [2 Restatement Torts, 2d, § 313, p 113 (emphasis added).]

As the comments to subsection (2) indicate, the basis for allowing the recovery for emotional distress in this context is that those actions "threaten[] the plaintiff with *bodily harm* . . . ." *Id*. at 114 (emphasis added). Accordingly, when there is nothing threatening the plaintiff with bodily harm, for instance when a claim involves only property damage, a defendant is not liable for unintended emotional distress.

11

negative implication arising from limiting damages for the negligent destruction or damage of property to replacement and repair costs. Put another way, despite the fact that throughout the course of our state's history, many thousands of houses and other real properties have doubtlessly been negligently destroyed or damaged, and despite the fact that surely in a great many, if not a majority, of those cases the residents and owners of those properties suffered considerable emotional distress, there is not a single Michigan judicial decision that expressly or impliedly supports the recovery of noneconomic damages in these circumstances.[6] Thus, supplementing the affirmative judicial decisions that we have cited in support of the limiting principles of the common law for the calculation of property damages is the absence of even a single affirmative judicial decision in support of the contrary proposition, a proposition that one would expect to have become commonplace within the law if it had ever existed. However, this particular dog has been perpetually silent and has never barked.

Moreover, the Court of Appeals has decided two relatively recent cases concerning injury to *personal* property in which noneconomic damages were disallowed. In *Koester v VCA Animal Hosp*, 244 Mich App 173; 624 NW2d 209 (2000), the plaintiff dog owner sought noneconomic damages in a tort action against his veterinarian following the death of his dog resulting from the veterinarian's negligence. The trial court granted the defendant's motion for summary disposition, holding that "emotional

---

[6] Indeed, *O'Donnell*, *Baranowski*, and *Strzelecki* all involved negligent damage to houses, while *Tillson*, *Bayley*, and *Bluemlein* involved negligent damage to other privately owned real property.

12

damages for the loss of a dog do not exist." *Id.* at 175. On appeal, the Court of Appeals affirmed, noting that pets are personal property under Michigan law and explaining that there "is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage." *Id.* at 176.

Later, in *Bernhardt v Ingham Regional Med Ctr*, 249 Mich App 274; 641 NW2d 868 (2002), the plaintiff visited the defendant hospital to bring home her adopted, newborn son. Before washing her hands, the plaintiff removed her jewelry, which consisted of her grandmother's 1897 wedding ring (which was also her wedding ring) and a watch purchased in 1980 around the time of her brother's murder. The plaintiff accidentally forgot the jewelry in the washbasin and left the hospital. Upon realizing her mistake, the plaintiff contacted the defendant and was advised that she could retrieve the jewelry from hospital security. However, when she tried to retrieve the jewelry, it could not be located. The plaintiff sued, and the defendant moved for summary disposition, arguing that the plaintiff's damages did not exceed the $25,000 jurisdictional limit of the trial court. The plaintiff countered that her damages exceeded that limit because the jewelry possessed great sentimental value. The trial court granted the defendant's motion. On appeal, the Court of Appeals affirmed, citing *Koester*, 109 Mich App at 176, for the proposition that there "is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage," *Bernhardt*, 249 Mich App at 279. *Bernhardt* concluded:

> In the present case, the two items of jewelry have a market value that can easily be ascertained. Hence, fair market value is the measure of damages. Because the items have a fair market value, there is no need to

13

resort to an alternative measure of damages to compensate plaintiff for her loss. [*Id.* at 281.]

In support of its conclusion, *Bernhardt* quoted the following language from the Restatement Second of Torts:

> If the subject matter cannot be replaced, however, as in the case of a destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced by the original cost, and the quality and condition at the time of the loss. . . . In these cases, however, damages cannot be based on sentimental value. Compensatory damages are not given for emotional distress caused merely by the loss of the things, except that in unusual circumstances damages may be awarded for humiliation caused by deprivation, as when one is deprived of essential elements of clothing. [*Id.* at 281, quoting 4 Restatement Torts, 2d, § 911, comment e, pp 474-475 (quotation marks omitted).]

While *Koester* and *Bernhardt* both involved negligent injury to *personal* property, they speak of property generally.[7] Although the Court of Appeals in the instant case seeks to draw distinctions between personal and real property, neither that Court nor plaintiff has explained how any of those distinctions, even if they had some pertinent foundation in the law, are relevant with regard to the propriety of awarding noneconomic

---

[7] *Koester* and *Bernhardt* stated that there is no Michigan precedent permitting the recovery of noneconomic damages resulting from property damage. Those statements are not limited to *personal* property damage. For example, *Bernhardt* cited the Restatement of Torts, which provides that "[c]ompensatory damages are not given for emotional distress caused merely by the loss of the *things* . . . ." *Bernhardt*, 249 Mich App at 281 (citation and quotation marks omitted). A house may be a home, but it is also a thing, albeit a thing to which many people develop emotional attachment. But like the jewelry in *Bernhardt*, a house has "a market value that can easily be ascertained." *Id.* at 281. Moreover, in *Wolverine*, 1 Mich App at 242, the Court of Appeals expressly applied the rule from *O'Donnell*, a real-property case, to personal property. See also *Strzelecki*, 133 Mich App at 194 (citing *Wolverine* for the proposition that the *O'Donnell* rule applies "as well to damages for personal property injured through negligence").

14

damages.[8]  In short, while it is doubtlessly true that many people are highly emotionally

attached to their houses, many people are also highly emotionally attached to their pets,[9]

their heirlooms, their collections, and any number of other things.  But there is no legally

relevant basis that would logically justify prohibiting the recovery of noneconomic

damages for the negligent killing of a pet or the negligent loss of a family heirloom but

allow such a recovery for the negligent destruction of a house.[10]  Accordingly, *Koester*

---

[8] In justifying its holding, the Court of Appeals identified the following differences between real and personal property: (1) trespass to land, unlike trespass to chattels, does not require an actual showing of damage, *Price*, 294 Mich App at 55; (2) breach of contract for the sale of real property includes the right to specific performance, *id.* at 56; (3) "[a]uthors and poets alike wax philosophical about the unique value of a home," *id.*; and (4) the destruction of a house causes "the stress and upheaval of displacement and the need to alternate shelter," *id.* at 57.  However, none of these differences is relevant to whether noneconomic damages should be available for the negligent destruction of real property: (1) allowing for nominal damages in a real-property trespass claim, and not a trespass-to-chattels claim, is merely a recognition in the law that a trespass to land can occur without causing actual damage, whereas a trespass to chattel actually deprives the owner of the chattel and, by necessity, causes actual damage; (2) specific performance remedies may be granted in cases involving both personal and real property, see *Richardson v Lamb*, 253 Mich 659, 663; 235 NW 817 (1931); (3) authors and poets wax philosophical-- or poetic-- about many things, but these waxings do not define the common law; and (4) the costs of relocating and rebuilding a house-- obtaining "alternate shelter" and attendant personal upheavals-- define the measure of what are largely *economic* costs and were covered by defendant, defendant's insurer, and plaintiff's insurer.  We do not question that there is personal stress attendant to the suffering of any tort, but such stress can as easily accompany the destruction or damage of personal property as of real property.

[9] Indeed, *Koester*, 244 Mich App at 175, recognized the fact that "domesticated pets have value and sentimentality associated with them which may not compare with that of other personal property . . . ."

[10] As defense counsel pointed out at oral argument, it seems anomalous that under the Court of Appeals' theory, while plaintiff could not recover damages for her emotional attachment to a family portrait that hung on the wall in her house, she could recover for

15

and *Bernhardt* underscore *O'Donnell*'s exclusion of noneconomic damages for negligent injury to real and personal property.

Finally, we would be remiss if we did not address *Sutter v Biggs*, 377 Mich 80, 86; 139 NW2d 684 (1966) (concerning a medical malpractice claim in which the plaintiff's ovary and fallopian tube were removed without her consent), which the Court of Appeals cited as providing the "general rule" for the recovery of damages in tort actions. *Sutter* stated:

> The general rule, expressed in terms of damages, and long followed in this State, is that in a tort action, the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated. Remote contingent, or speculative damages are not considered in conformity to the general rule. *Van Keulen & Winchester Lumber Co. v. Manistee and Northeastern Railroad Co.*, 222 Mich 682 [193 NW 289 (1923)]; *Woodyard v. Barnett*, 335 Mich 352 [56 NW2d 214 (1953)]; and *Fisk v. Powell*, 349 Mich 604 [84 NW2d 736 (1957)]. See, also *McLane, Swift & Co. v. Botsford Elevator Co.*, 136 Mich 664 [99 NW 875 (1904)], and *Cassidy v. Kraft-Phenix Cheese Corp.*, 285 Mich 426 [280 NW 814 (1938)]. [*Id.*]

Although *Sutter* articulates a "general rule," it is a "general rule" that has never been applied to allow the recovery of noneconomic damages in a case involving only property damage,[11] and it is a "general rule" that must be read in light of the more narrow and

---

emotional attachment to the wall itself. The Court of Appeals' distinctions between real and personal property are ultimately arbitrary and unsustainable.

[11] None of the cases cited by *Sutter* in support of its "general rule" involved noneconomic damages. *Van Keulen*, 222 Mich 682 (whether and to what extent the defendant was

specific "general rule" of *O'Donnell*.[12]

The development of the common law frequently yields "general rules" from which branch more specific "general rules" that apply in limited circumstances. Where tension exists between those rules, the more specific rule controls.[13] See *Moning v Alfono*, 400 Mich 425, 442-449; 254 NW2d 759 (1977) (acknowledging the "general standard of

---

liable for failing to notify a consignee that delivered lumber had not been kiln-dried); *Woodyard*, 335 Mich 352 (whether the defendant was liable for the plaintiff's inability to complete his beet harvest); *Fisk*, 349 Mich 604 (whether the defendants were liable for the plaintiffs' partial crop failure); *McLane*, 136 Mich 664 (whether the defendant's failure was a proximate cause of the plaintiff's loss of oats); *Cassidy*, 285 Mich 426 (whether the defendant's refusal to enter into a written contract removed the plaintiff's claim from the statute of frauds).

[12] *Valentine v Gen American Credit, Inc*, 420 Mich 256, 261; 362 NW2d 628 (1984), explained that emotional harm attendant to economic loss is insufficient to warrant noneconomic damages *even where a plaintiff would not be made whole absent such damages*:

> The denial of mental distress damages, although the result is to leave the plaintiff with less than a full recovery, has analogy in the law. The law does not generally compensate for all losses suffered. Recovery is denied for attorney's fees, for mental anguish not accompanied by physical manifestation, and "make-whole" or full recovery has been denied where the cost of performance exceeds the value to the promisee. The courts have not, despite "make whole" generalizations regarding the damages recoverable, attempted to provide compensation for all losses. Instead, specific rules have been established that provide for the calculation of the damages recoverable in particular kinds of actions. [Citations omitted.]

The *O'Donnell* rule is precisely such a specific rule in an action for the negligent destruction of property.

[13] This tension does not suggest that the more general rule is incorrect, only that it must yield to the more specific rule in the appropriate circumstances. That is the case for *Sutter*'s rule; that is, while *Sutter* provided an appropriate "general rule" for tort actions generally, *O'Donnell* provided an exception to that rule that has been specifically adapted to tort actions involving only property damage.

17

conduct" in a negligence case but allowing the jury to consider "one of the many specific rules concerning particular conduct that have evolved in the application of the general standard of care"); see also *Beech Grove*, 380 Mich at 430 ("'[C]hanging conditions may give rise to new rights under the law, and, also, where the reason on which existing rules of the common law are founded ceases, the rules may cease to have application.'"), quoting 15A CJS, Common Law, § 2, pp 43-44. With respect to this case, although *Sutter* articulated a general rule, *O'Donnell* articulated a more specific "general rule," applicable in negligence actions in which there is only property damage. Accordingly, because this case involves only property damage, the *O'Donnell* rule, not the *Sutter* rule, controls.[14]

## B. ALTERING THE COMMON LAW

Because the Court of Appeals determined that the "general rule" is that "in a tort action, the tort-feasor is liable for *all* injuries,"[15] the Court of Appeals contended that it

---

[14] Although *Sutter* was decided some years after *O'Donnell*, the "general rules" articulated in these cases have each been restated repeatedly over the years without conflict (until this case). This history underscores that the two "general rules" here operate in parallel and are complementary.

[15] The Court of Appeals did not acknowledge *Valentine*. It addressed the *O'Donnell* rule-- by reference to *Strzelecki* and *Baranowski*-- but determined that application of that rule to the instant case would be inappropriate because the cases in which that rule has been applied "addressed the measure of damages for *economic* loss suffered as a result of the destruction of real property" and did not include "a discussion of noneconomic damages." *Price*, 294 Mich App at 53. This ignores *Wolverine* (and *Strzelecki*'s citation of *Wolverine*), which applied the *O'Donnell* rule to damages for personal property. Moreover, in our judgment, the absence of discussion regarding noneconomic damages, as explained earlier in this opinion, supports, rather than undermines, our conclusion that noneconomic damages are not recoverable. Not only did both *Strzelecki* and *Baranowski*

18

was not altering the common law but, rather, "declin[ing] to extend" to real property the personal property "exception" set forth in *Koester* and *Bernhardt*.[16] *Price*, 294 Mich App at 54-55 (quotation marks and citation omitted). However, as previously mentioned, the Court of Appeals' opinion constitutes the first and only Michigan case to support the recovery of noneconomic damages for the negligent destruction of property.[17] See 2 Michigan Law of Damages & Other Remedies (3d ed), § 19.18.[18] Accordingly, contrary

---

involve damage to houses, but one would think that decades-long restatements by the judiciary of this state that tort damage to property is recompensed by $x + y$ would at some point logically communicate that $z$ is not also included.

[16] Contrary to the analysis of the Court of Appeals in this case, *Koester*, 244 Mich App at 176, explained that it was declining to create new tort liability:

> In essence, plaintiff requests that we create for pet owners an independent cause of action for loss of companionship when a pet is negligently injured by a veterinarian. Although this Court is sympathetic to plaintiff's position, we defer to the Legislature to create such a remedy.

[17] It is also worth noting that none of the cases cited by the Court of Appeals in this case involved only property damage. Indeed, with the exception of *Daley v LaCroix*, 384 Mich 4; 179 NW2d 390 (1970), none of the cases cited by the Court of Appeals involved property damage at all. *Sutter*, 377 Mich at 83-84, and *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492, 493-494; 665 NW2d 484 (2003), both involved claims for bodily injury resulting from medical malpractice. *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 241-242; 531 NW2d 144 (1995), involved a claim for emotional distress resulting from a retaliatory discharge, and *Daley*, 384 Mich at 13, involved a claim for emotional distress resulting from fright. Moreover, *Stevens v City of Flint*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2007 (Docket No. 272329), and *Bielat v South Macomb Disposal Auth*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2004 (Docket No. 249147)-- the unpublished opinions the Court of Appeals cited as persuasive authority-- both involved trespass-nuisance claims.

[18] The treatise cites the Court of Appeals' decision as the only exception to the *O'Donnell* rule:

to the Court of Appeals' own characterization and for the reasons discussed in part III(A) of this opinion, the Court of Appeals' holding represents an alteration of the common law. With that understanding, we address whether the common law *should* be altered.

"This Court is the principal steward of Michigan's common law," *Henry v Dow Chem Co*, 473 Mich 63, 83; 701 NW2d 684 (2005), and it is "axiomatic that our courts have the constitutional authority to change the common law in the proper case," *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 403 n 9; 578 NW2d 267 (1998). This authority is traceable to Const 1963, art 3, § 7, which states, "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed." Thus, as this Court has explained, "the common-law rule remains the law until modified by this Court or by the Legislature." *Longstreth v Gensel*, 423 Mich 675, 686; 377 NW2d 804 (1985). However, this Court has also explained that alteration of the common law should be approached cautiously with the fullest consideration of public policy and should not occur through sudden departure from longstanding legal rules. *Henry*, 473 Mich at 83 ("[O]ur common-law jurisprudence has been guided by a number of prudential principles. See Young, *A judicial traditionalist confronts the common law*, 8 Texas Rev L & Pol 299, 305-310 (2004). Among them has been our attempt to 'avoid capricious departures

---

Note that the Michigan Court of Appeals has held that a plaintiff may seek recovery for noneconomic damages in a negligence action for mental anguish naturally flowing from the damage to or destruction of real property. [2 Michigan Law of Damages & Other Remedies (3d ed), § 19-18, citing *Price*, 294 Mich App 42.]

20

from bedrock legal rules as such tectonic shifts might produce unforeseen and undesirable consequences,' *id*. at 307 . . . ."); see also *Woodman*, 486 Mich at 231 (opinion by YOUNG, J.) ("[M]odifications [of the common law] should be made with the utmost caution because it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule."); *id.* at 268 (MARKMAN, J., concurring in part and dissenting in part) (explaining that the common law develops incrementally); *North Ottawa*, 457 Mich at 403 n 9 (providing that common law should only be changed "in the proper case").[19]   As this emphasis on incrementalism suggests, when it comes to alteration of the common law, the traditional rule must prevail absent compelling reasons for change.  This approach ensures continuity and stability in the law.

With the foregoing principles in mind, we respectfully decline to alter the common-law rule that the appropriate measure of damages for negligently damaged property is the cost of replacement or repair.  We are not oblivious to the reality that

---

[19] Similarly, *Koester*, 244 Mich App at 176-177, explained:

> There are several factors that must be considered before expanding or creating tort liability, including, but not limited to, legislative and judicial policies.  In this case, there is no statutory, judicial, or other persuasive authority that compels or permits this Court to take the drastic action proposed by plaintiff.  Case law on this issue from sister states is not consistent, persuasive, or sufficient precedent.  We refuse to create a remedy where there is no legal structure in which to give it support.  However, plaintiff and others are free to urge the Legislature to visit this issue in light of public policy considerations, including societal sentiment . . . .

destruction of property or property damage will often engender considerable mental distress, and we are quite prepared to believe that the particular circumstances of the instant case were sufficient to have caused exactly such distress. However, we are persuaded that the present rule is a rational one and justifiable as a matter of reasonable public policy. We recognize that might also be true of alternative rules that could be constructed by this Court. In the final analysis, however, the venerability of the present rule and the lack of any compelling argument that would suggest its objectionableness in light of changing social and economic circumstances weigh, in our judgment, in favor of its retention. Because we believe the rule to be sound, if change is going to come, it must come by legislative alteration.[20] A number of factors persuade us that the longstanding

---

[20] Although this Court is vested with the power to alter the common law, as already explained, such alteration should not be undertaken lightly. As counseled in *People v Kevorkian*, 447 Mich 436, 482 n 60; 527 NW2d 714 (1994) (opinion by CAVANAGH, C.J., and BRICKLEY and GRIFFIN, JJ.), quoting Justice Cardozo's *The Nature of the Judicial Process*:

> The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to the primordial necessity of order in the social life. Wide enough in all conscience is the field of discretion that remains. [Quotation marks and citations omitted.]

Thus, this Court does not alter the common law at its unchecked discretion, much less at its whim. Rather, we are bound to tradition and stability and continuity. By virtue of its overtly political and representative nature, the Legislature is bound by different considerations. The barriers standing before this Court's alteration of the common law are significantly higher than those facing the Legislature.

character of the present rule is not simply a function of serendipity or of judicial inertia, but is reflective of the fact that the rule serves legitimate purposes and values within our legal system.

First, one of the most fundamental principles of our economic system is that the market sets the price of property. This is so even though every individual values property differently as a function of his or her own particular preferences. Inherent in this principle is that any property an individual owns is presumably *valued by that individual* at or above its market rate. Otherwise, he or she presumably would not have purchased the property or continue to own it. Just as an individual typically does not pay for this surplus value, the law does not necessarily compensate that individual where that surplus value has been lost.[21]

Second, economic damages, unlike noneconomic damages, are easily verifiable, quantifiable, and measurable. Thus, when measured only in terms of economic damages, the value of property is easily ascertainable. Employing market prices in calculating compensation for property damage eliminates the need to engage in subjective determinations of property value and enables the legal system to undertake commonplace and precise determinations of value. This explains why, at least where the plaintiff has not sustained physical injury, the cost of the property's replacement or repair has been the traditional standard for making a plaintiff "whole" under the law. See *Valentine v Gen*

---

[21] Concomitantly, even if an individual values his or her property below the market rate, the law does not reduce his or her tort damages by that amount.

23

*American Credit, Inc*, 420 Mich 256, 261; 362 NW2d 628 (1984); *Bernhardt*, 249 Mich App at 279.  This is so despite the fact that nearly every case involves *some* measure of emotional harm-- if only from the stress of litigation-- to victimized parties.

Third, limiting damages to the economic value of the damaged or destroyed property limits disparities in damage awards from case to case.  Disparities in recovery are inherent in legal matters in which the value of what is in dispute is neither tangible nor objectively determined, but rather intangible and subjectively determined.  Whereas under the present rule, all plaintiffs suffering an identical harm to their properties are compensated on a uniform basis, under the Court of Appeals' rule, there would be as many levels of compensation as there are plaintiffs because no two plaintiffs would likely react to the damage or destruction of their properties in exactly the same fashion.  Indeed, both objective and subjective disparities would result.  Objective disparities would arise because, even if noneconomic harms were precisely quantifiable, identical injuries to identical properties could lead to severe mental distress for one person, while causing only minor annoyance for another.  Subjective disparities would arise because noneconomic harms *cannot* be precisely quantified, so we must normally rely on juries to determine (1) whether noneconomic harms were caused, (2) the extent of such harms, and (3) the monetary value of such harms.  The disparity in assessing damages by different fact-finders would presumably compound with each step in this chain of conjecture.

Fourth, the present rule affords some reasonable level of certainty to businesses regarding the potential scope of their liability for accidents caused to property resulting

24

from their negligent conduct. As explained earlier in this opinion, under the Court of Appeals' rule, those businesses that come into regular contact with real property-- contractors, repairmen, and fuel suppliers, for example-- would be exposed to the uncertainty of not knowing whether their exposure to tort liability will be defined by a plaintiff who has an unusual emotional attachment to the property or by a jury that has an unusually sympathetic opinion toward those emotional attachments. Insurers would have a similarly difficult time calculating the extent of the risks against which they are insuring. Schwartz & Laird, *Non-economic damages in pet litigation: The serious need to preserve a rational rule*, 33 Pepp L R 227, 261 (2006) ("When wild-card non-economic damages are added to the equation, however, actuaries cannot accurately predict the likely costs of lawsuits."), citing Huss, *Valuation in veterinary malpractice*, 35 Loy U Chi L J 479, 532 (2004).

Once again, it is not our view that the common-law rule in Michigan cannot be improved, or that it represents the best of all possible rules, only that the rule is a reasonable one and has survived for as long as it has because there is some reasonable basis for the rule and that no compelling reasons for replacing it have been set forth by either the Court of Appeals or plaintiff. We therefore leave it to the Legislature, if it chooses to do so at some future time, to more carefully balance the benefits of the current rule with what that body might come to view as its shortcomings.[22]

---

[22] Having reached this conclusion, we need not address defendant's additional claims on appeal.

## IV. CONCLUSION

The issue in this case is whether noneconomic damages are recoverable for the negligent destruction of real property. No Michigan case has ever allowed a plaintiff to recover noneconomic damages resulting solely from the negligent destruction of property, either real or personal. Rather, the common law of this state has long provided that the appropriate measure of damages in cases involving the negligent destruction of property is simply the cost of replacement or repair of the negligently destroyed property. We continue today to adhere to this rule and decline to alter it. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for entry of summary disposition in defendant's favor.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

CAVANAGH, J., took no part in the decision of this case because of a familial relationship with counsel of record.

McCORMACK and VIVIANO, JJ., took no part in the decision of this case.

26