# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## JANINI v LONDON TOWNHOUSES CONDOMINIUM ASSOCIATION

Docket No. 164158. Argued on application for leave to appeal November 8, 2023. Decided July 11, 2024.

Daoud M. Janini and Feryal Janini filed a complaint against London Townhouses Condominium Association in the Wayne Circuit Court alleging that defendant had breached its duty to maintain the sidewalk in the condominium complex by failing to timely remove snow and ice. Plaintiffs owned and resided in a condominium unit in a condominium complex. Defendant was an association of the co-owners of the condominiums in the complex, and defendant was responsible for clearing snow and ice from the common areas of the complex. Daoud Janini fell on a snow- and ice-covered sidewalk in a common area of the complex and hit the back of his head, resulting in a brain injury. After plaintiffs filed their action, defendant moved for summary disposition. The trial court, Dana M. Hathaway, J., granted defendant's motion in part and denied it in part, dismissing all of plaintiffs' claims except for their premises-liability claim. Defendant sought leave to appeal in the Court of Appeals, and the Court of Appeals, CAVANAGH, P.J., and GADOLA, J. (SHAPIRO, J., concurring), reversed the trial court's order denying summary disposition as to the premises-liability claim in an unpublished per curiam opinion. The Court of Appeals held that because plaintiffs were co-owners of the land on which Daoud fell, he was precluded from bringing a premises-liability claim. Plaintiffs sought leave to appeal in the Supreme Court, and in lieu of granting leave, the Supreme Court ordered oral argument on the application. 509 Mich 1072 (2022).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CLEMENT and Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court *held*:

A co-owner of a condominium unit in a condominium project is an invitee when that person enters the common elements of the condominium project, and the condominium association owes the co-owner a duty to exercise reasonable care to protect the co-owner from dangerous conditions on the land. Therefore, a co-owner may maintain a premises-liability action against the condominium association, and *Francescutti v Fox Chase Condo Ass'n*, 312 Mich App 640 (2015), was overruled.

1. In Michigan, condominium ownership is governed by the Condominium Act, MCL 559.101 *et seq*., and under the act, the administration of a condominium project is governed by the

condominium bylaws. The "common elements" of a condominium project are the portions of the project other than the condominium units. Under the act, the condominium association is a separate legal entity that is capable of being sued by a co-owner or other person. Although the act is silent regarding whether a condominium association has a common-law duty to protect a co-owner from dangerous conditions on the land under its control, i.e., the common areas, nothing in the act clearly prohibits application of the common law to such circumstances. Moreover, there is no indication that, by creating a statutory cause of action that co-owners and others may bring against a condominium association to compel it to enforce the provisions of the governing documents, the Legislature meant to abrogate the common law and immunize condominium associations from tort liability. However, whether a condominium co-owner may maintain a premises-liability action against a condominium association depends on whether a special relationship exists between the co-owner and the association as the owner, occupier, or possessor of the land, such that the law imposes a duty of care on the association.

2. Historically, Michigan has recognized that the duty a possessor of land owes to a person who enters the land depends on whether the visitor is classified as an invitee, a licensee, or a trespasser. An invitee is entitled to the highest level of protection under premises-liability law and enters the land of another upon an invitation that carries an implied assurance that reasonable care has been taken to make the premises safe for their reception. Thus, landowners owe a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. Special relationships are predicated on an imbalance of control; i.e., the party in possession is in a position of control and is normally best able to prevent harm to others. Although a condominium project's common elements are typically owned collectively by the condominium co-owners, the co-owners do not independently exercise exclusive ownership over the common elements, but rather cede control to the condominium association, whose responsibility it becomes to maintain the common elements. Thus, while condominium co-owners have an undivided interest in the common elements under the act, that interest does not mean that they have control over the common elements.

3. The Michigan Supreme Court has recognized that a "special relationship" exists between a landlord and tenant, and in practice, the relationship between a condominium association and a condominium co-owner is similar to this relationship. For instance, apartment structures have common elements, which the lessor has a duty to maintain. Tenants lack control over these areas, while the landlord has control over them and thus a duty to keep the areas reasonably safe. The Court of Appeals has recognized that tenants are invitees of the landlord while in the common areas. The landlord-tenant relationship mirrors the relationship between a condominium association and a condominium co-owner. In this case, defendant assumed a duty to maintain the common elements under its bylaws, which necessarily required defendant to assume control over the common elements. Plaintiff, by agreeing to the bylaws, ceded control over the common elements to defendant.

4. The next question to consider was whether the special relationship between plaintiff and defendant was that of invitee and land possessor. Invitee status is commonly afforded to persons entering the property of another for a business purpose. In this case, plaintiff was in a business relationship with defendant and paid money to defendant to maintain the common elements. Moreover, in becoming a co-owner, plaintiff agreed to cede individual authority over the common

elements to the association, and defendant's bylaws ensured that the premises would be made safe for plaintiff's use. Under this framework, plaintiff was an invitee and could maintain a premises-liability action against defendant. Although previous premises-liability caselaw may refer to the "land of another," this does not necessarily mean the land of another *owner*. Rather, the "land of another" means that another person or entity has possession and control over the land on which a person is injured. Land ownership is not dispositive to the inquiry in premises-liability cases.

Reversed and remanded.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, would not have overruled *Francescutti*, and, instead, would have held that plaintiff was not a common-law invitee, licensee, or trespasser while in the general common elements of the condominium project. The legal status of a condominium co-owner is not defined by the common law of premises liability, but by the Condominium Act. The legal relationship between a condominium co-owner and their condominium association is governed entirely by the Condominium Act and the association's bylaws; the common law has no application. The Condominium Act limits a condominium co-owner's right to legal action against the condominium association to one for injunctive relief or breach of contract; the act does not provide that damages may be sought from the association. A condominium is an estate in real property and a form of property ownership that did not exist at common law. Therefore, the relationship between a condominium co-owner and a condominium association has always been the product of statutory law. There is little justification for the majority's declaration that condominium co-owners have the rights of tenants under the common law or for classifying them as invitees as to the general common elements of the condominium project. Unlike a tenant, a co-owner has a pecuniary interest in the property, and unlike a landlord, an association is a nonprofit entity with no pecuniary interest in the property.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 11, 2024

STATE OF MICHIGAN

SUPREME COURT

DAOUD MOUSA JANINI and FERYAL JANINI,

        Plaintiffs-Appellants,

v                               No. 164158

LONDON TOWNHOUSES CONDOMINIUM ASSOCIATION,

        Defendant-Appellee,

and

JAMES PYDA,

        Defendant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we consider whether a condominium co-owner can maintain a premises-liability action against a condominium association when the co-owner was

injured while using the condominium's common elements. We conclude that the Court of Appeals erroneously determined that a condominium co-owner is neither a licensee nor an invitee and thus is precluded from bringing a premises-liability claim against a condominium association simply because the condominium co-owner holds an interest in those common elements. The proper inquiry when considering the duty owed in a premises-liability action is who has possession and control over the land where a person was injured, not merely who owns the land. We hold that, when the master deed and bylaws governing a condominium complex provide that the condominium association is responsible for maintaining the common areas and the condominium's co-owners lack possession and control over those common areas, a condominium co-owner using the condominium complex's common areas and elements is an invitee. In such circumstances, a condominium association owes a condominium co-owner a common-law duty to exercise reasonable care to protect them from dangerous conditions in the common areas. For that reason, we reverse the judgment of the Court of Appeals and remand to the trial court for proceedings not inconsistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Daoud and Feryal Janini own and reside in a condominium unit that is part of a condominium complex.[1] On March 16, 2019, plaintiff stepped out of his condominium and into a common area of the complex to throw garbage into a dumpster. Plaintiff walked down the complex's sidewalk, which was covered in snow and ice. While walking on the

---

[1] Plaintiff Feryal Janini's claim is a derivative loss of consortium claim. Accordingly, the use of the singular "plaintiff" throughout this opinion refers specifically to plaintiff Daoud Janini.

sidewalk, plaintiff slipped and fell, hitting the back of his head against the icy sidewalk. This fall resulted in a brain injury.

Defendant London Townhouses Condominium Association is an association of the co-owners of the condominiums in the complex.[2] Defendant's bylaws expressly state that it is responsible for the maintenance of the complex's common elements. It is undisputed on appeal that defendant was responsible for the maintenance of the sidewalk on which plaintiff was injured.

On June 19, 2019, plaintiffs filed a complaint against defendant, alleging that defendant breached its duty to maintain the sidewalk by failing to timely remove snow and ice from the sidewalk. Relevant to this appeal, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10).

The trial court dismissed almost all of plaintiffs' claims except for the premises-liability claim, finding that genuine issues of fact existed on that claim alone. Defendant filed a motion for reconsideration, which the trial court denied. Defendant sought leave to appeal in the Court of Appeals, and the Court of Appeals granted the application.

On February 1, 2022, the Court of Appeals reversed the trial court's order denying summary disposition in an unpublished per curiam opinion. *Janini v London Townhouses Condo Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2022 (Docket No. 355191). In so holding, the Court of Appeals relied on *Francescutti v Fox Chase Condo Ass'n*, 312 Mich App 640; 886 NW2d 891 (2015), which also involved

---

[2] This appeal concerns only the claims against defendant London Townhouses Condominium Association. The claims against defendant James Pyda were dismissed by stipulated order, and Pyda is not a party to this appeal.

3

a premises-liability claim filed by a plaintiff who was an owner of a condominium against a defendant condominium association. In *Francescutti*, the Court of Appeals held that the plaintiff, who slipped and fell on an icy, snow-covered sidewalk, could not bring a premises-liability action against the defendant. *Id*. at 643. The *Francescutti* Court reasoned that, because the plaintiff was a co-owner of the sidewalk, the plaintiff did not enter on "the land of another" and thus was neither a licensee nor an invitee. *Id*. Accordingly, the *Francescutti* Court concluded that the defendant did not owe a duty to the plaintiff under a premises-liability theory. *Id*.

In relying on *Francescutti*, the Court of Appeals here explained that plaintiffs were co-owners of the land on which plaintiff fell. Because plaintiffs were "in possession" of the condominium's common elements, the Court of Appeals reasoned that plaintiff was not on land that was in the possession of another when he slipped and fell. *Janini*, unpub op at 4-5. Because the Court of Appeals concluded that plaintiff was neither an invitee nor a licensee at the time of the fall, it held that plaintiffs were precluded from bringing a premises-liability claim against defendant.

Judge SHAPIRO wrote a concurring opinion, indicating that he agreed with the majority that *Francescutti* required reversing the trial court in this case but stating that he believed that *Francescutti* had been wrongly decided. *Janini* (SHAPIRO, J., concurring), unpub op at 1, 7.

Plaintiffs sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application. *Janini v London Townhouses Condo Ass'n*, 509 Mich 1072 (2022).

4

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120.]

A reviewing court "should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial." *Id*. at 121.

## III. ANALYSIS

In Michigan, condominium ownership is governed by the Condominium Act, MCL 559.101 *et seq*. A condominium co-owner is "a person, firm, corporation, partnership, association, trust, or other legal entity or any combination of those entities, who owns a condominium unit within the condominium project." MCL 559.106(1). "Pursuant to the Condominium Act, the administration of a condominium project is governed by the condominium bylaws. MCL 559.153. Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393;

5

875 NW2d 234 (2015). The condominium's common elements are "the portions of the condominium project other than the condominium units." MCL 559.103(7). If provided by a master deed, condominium co-owners may hold an undivided interest in the common elements, MCL 559.137, and except as otherwise provided by the Act, a condominium co-owner may not alter the common elements. See MCL 559.137(5); MCL 559.147(1).

The Condominium Act also recognizes that the condominium association is a separate legal entity that is capable of being sued. See MCL 559.207 ("A co-owner may maintain an action against the association of co-owners and its officers and directors to compel these persons to enforce the terms and provisions of the condominium documents."); MCL 559.215(1) ("A person . . . adversely affected by a violation of or failure to comply with this act, rules promulgated under this act, or any provision of an agreement or a master deed may bring an action for relief in a court of competent jurisdiction.").

The dissent argues that this Court errs by recognizing that a condominium co-owner may maintain a cause of action against a condominium association under a premises-liability theory because condominiums are governed by a detailed statutory scheme and because the relationship between a condominium association and a condominium co-owner had not before been defined by the common law. However, neither fact necessarily precludes a resort to common-law principles. We do not create or modify the common law in this opinion. We instead apply pre-existing principles regarding the duties of those with possession and control over land to a new circumstance. While the statutory scheme is silent as to whether a common-law duty is afforded to a condominium co-owner from a condominium association, nothing in the Condominium Act clearly prohibits the

6

application of the common law to these circumstances. See *Bazzi v Sentinel Ins Co*, 502 Mich 390, 400; 919 NW2d 20 (2018) (holding that an insurer that defended a cause of action against it under the no-fault act may "avail itself of any common-law defenses" unless "*clearly* prohibited by statute") (emphasis added). Indeed, "legislative amendment of the common law is not lightly presumed." *Wold Architects and Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006). "The Legislature is presumed to know of the existence of the common law when it acts." *Id*. at 234. Thus, the Legislature "should speak in no uncertain terms" when it seeks to modify the common law. *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).

The dissent infers that because MCL 559.207 does not expressly use the word "damages" in describing permissible relief between a condominium association and a condominium co-owner, the Legislature must have clearly intended to displace a common-law premises-liability cause of action. We disagree. MCL 559.207 governs causes of action between a condominium co-owner and a condominium association as they relate to violations of a condominium project's governing documents. The fact that the Legislature sought to codify a remedy for the violation of a condominium project's governing documents does not lead us to believe that the Legislature necessarily intended to displace common-law causes of action between a condominium co-owner and a condominium association.[3] Indeed, if the Legislature had intended the Condominium Act's provisions to

---

[3] The dissent also dismisses MCL 559.215(1), which allows a person to seek relief generally, by explaining that a person is not a co-owner under the Condominium Act. We disagree. A co-owner is clearly a "person." See MCL 559.106(1) (defining a co-owner to include "a *person* . . . who owns a condominium unit within the condominium project") (emphasis added).

provide exclusive remedies, the Legislature could have said so. See *Wold*, 474 Mich at 234 (explaining that where a statutory scheme and common-law principles coexist, "the Legislature could have easily stated an intent to abrogate [the] common-law"). Similarly, if the Legislature wished to immunize condominium associations from tort liability, they could have said so. See generally MCL 691.1407(1) ("Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."). In other words, the codification of a distinct remedy under MCL 559.207, which provides guidance as to when an injunction to compel enforcement of the condominium documents is appropriate, does not expressly or impliedly eliminate remedies available under the common law. We presume that the Legislature meant what it said. *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007). What the Legislature said in the Condominium Act is that condominium co-owners can pursue an action that compels a condominium association to enforce the provisions of the governing documents. The Legislature has *not* said that the codification of this distinct cause of action is intended to displace common-law causes of action, such that a condominium association is effectively immune from tort liability.

Having concluded that plaintiff's common-law cause of action is not precluded by the Condominium Act, we next acknowledge that whether a condominium co-owner may maintain a premises-liability suit against a condominium association depends on whether a special relationship exists between the co-owner and the condominium association as the owner, occupier, or possessor of the land, such that the law will impose a duty of care on the condominium association. See *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013). Historically, Michigan has recognized that the duty a possessor of land owes to a

8

person who enters the land depends on whether the visitor is classified as an invitee, a licensee, or a trespasser. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). "An 'invitee' is 'a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception.' " *Id*. at 596-597 (citation omitted; alterations in original). "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id*. at 597. "A 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Id*. at 596. "A 'trespasser' is a person who enters upon another's land, without the landowner's consent." *Id*.

" '[A]n invitee is entitled to the highest level of protection under premises liability law.' " *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 112; 1 NW3d 44 (2023), quoting *Stitt*, 462 Mich at 597. "Land possessors owe a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted). "A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596. The law imposes no additional "duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Id*. "The landowner owes no duty to the trespasser except to refrain from injuring him by wilful and wanton misconduct." *Id*. (quotation marks and citation omitted).

We have previously explained that "[t]hese special relationships are predicated on an imbalance of control, where one person entrusts himself to the control and protection of

9

another, with a consequent loss of control to protect himself." *Bailey*, 494 Mich at 604 (quotation marks, citation, and emphasis omitted). We have further explained that premises-liability actions are predicated on "both possession and control over the land." *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 660; 575 NW2d 745 (1998) (quotation marks and citation omitted). This is because the "party in possession is in a position of control, and normally best able to prevent any harm to others." *Finazzo v Fire Equip Co*, 323 Mich App 620, 627; 918 NW2d 200 (2018) (quotation marks, citations and emphasis omitted).

It is true that, strictly speaking, a condominium building's common elements are typically owned collectively by the condominium co-owners, as with plaintiffs in this case. Accordingly, condominium co-owners often do not independently exercise exclusive ownership over the common elements. Such an arrangement would be prone to dispute. Rather, condominium co-owners cede control over those common elements to the condominium association, and it becomes the responsibility of the condominium association to maintain those common elements. See *Bruce E. Cohan, MD, PC v Riverside Park Place Condo Ass'n, Inc*, 140 Mich App 564, 569-570; 365 NW2d 201 (1985) ("Inherent in the condominium concept is the principle that to promote the health, happiness and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, *each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property.*") (quotation marks, citations, and brackets omitted). In this way, while condominium co-owners have an undivided interest in the common elements, MCL 559.137(1); see also MCL 559.163, that interest does not necessarily amount to *control*

over the common elements, see MCL 559.147(1) (stating that while a co-owner may make alterations within a condominium unit they may not "do anything which would change the exterior appearance of a condominium unit *or of any other portion of the condominium project* except to the extent and subject to the conditions as the condominium documents may specify") (emphasis added). Thus, the practical reality is that while plaintiff was a co-owner of the common elements, he did not enjoy exclusive control over them, which one typically associates with land possession.[4]

When we consider the practical reality of the relationship between a condominium co-owner and a condominium association, it is often like that of a landlord and a tenant. We have previously observed that, under some circumstances, apartment structures contain common elements, which the lessor has a duty to maintain. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 429; 751 NW2d 8 (2008). This Court has recognized that a "special relationship" exists between a landlord and its tenant. *Bailey*, 494 Mich at 608-609 ("[W]here tenants, their invitees, or a merchant's invitees lack control over certain premises, the concomitant actor in the special relationship—the landlord or merchant—

---

[4] We recognize that in some circumstances the master deed and the condominium association's bylaws can, by their terms, alter the relationship between a condominium association and a condominium co-owner. Certainly, in many condominium disputes, like this one, individual condominium co-owners have little to no authority over the common areas and elements. In such a circumstance, the possession of those common areas and elements remains with the condominium association. This necessarily produces a special relationship between the condominium association, as the party with control over the land, and the condominium co-owner, as a person who enters the land. However, this opinion does not purport to apply to any and all disputes between a condominium association and a condominium co-owner. We reiterate that the condominium complex's master deed and bylaws govern the relationship between a condominium association and a condominium co-owner, and the terms of those documents will determine the relationship that exists between a condominium association and a condominium co-owner.

bears the burden of control and thus the duty [to] keep such areas reasonably safe."). The Court of Appeals has aptly recognized in these circumstances that the tenant is the landlord's invitee. *Stanley v Town Square Coop*, 203 Mich App 143, 147; 512 NW2d 51 (1993) (explaining that "tenants are invitees of the landlord while in the common areas, because the landlord has received a pecuniary benefit for licensing their presence"); *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 285; 933 NW2d 732 (2019) ("A tenant is an invitee of the landlord.").[5]

In this case, the landlord-tenant relationship mirrors the relationship between a condominium association and a condominium co-owner. Defendant, per its own bylaws, assumed a duty to maintain the common elements. In order to maintain the common elements, defendant necessarily assumed control over them. Plaintiffs, by agreeing to these bylaws, ceded their control over the common elements to defendant. Thus, we conclude that the relationship between a condominium association and a condominium co-owner is similar to the special relationship between a land possessor and its guests.

With this background in mind, we next consider whether the special relationship between plaintiff and defendant is one of an invitee and a land possessor. In order to establish invitee status, we consider whether an individual enters the land by invitation. *Stitt*, 462 Mich at 596-597. Invitee status is commonly afforded to persons entering upon the property of another for business purposes. *Id*. at 597. Here, plaintiffs were in a business

---

[5] We acknowledge, as the dissent does, that condominium co-owners and tenants are different from one another. But the lack of a perfect pre-existing analogy between condominium relationships and those reflected in the traditional premises-liability framework does not mean that we should ignore the imbalance of possession and control that is typical in a condominium relationship and impose no duty at all.

12

relationship with defendant. Plaintiffs paid money to the condominium association to maintain the common elements for their own use and enjoyment. Plaintiffs' ability to purchase a condominium unit, along with their rights to use the common elements, are subject to the condition that plaintiffs pay these dues to the condominium association and cede their individual authority over the common elements to the association. Further, by defendant's own bylaws, plaintiffs were assured that the premises would be made safe for plaintiffs' use. See *id*. at 596-597 (explaining that an "invitee" "enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception . . . . The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe") (quotation marks and citation omitted; alterations in original). We hold that, under this framework, plaintiff is an invitee and can maintain a premises-liability action against the condominium association.[6] See also *Jeffrey-Moise v Williamsburg Towne Houses*

_____

[6] Indeed, many of our sister courts have made similar observations. The Arizona Supreme Court has explained that if a condominium association "owes no duty of care over the common areas of the property, no one does because no one else possesses the ability to cure defects in the common area." *Martinez v Woodmar IV Condos Homeowners Ass'n, Inc*, 189 Ariz 206, 209; 941 P2d 218 (1997). Finding that the law cannot recognize "such a lack of responsibility for safety," the Arizona Supreme Court held that "with respect to common areas under its exclusive control, a condominium association has the same duties as a landlord." *Id*. The California Supreme Court also explained that a condominium association "is, for all practical purposes, the Project's 'landlord.' " *Frances T v Village Green Owners Ass'n*, 42 Cal 3d 490, 499; 723 P2d 523 (1986). "And traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control." *Id*. See also *Sevigny v Dibble Hollow Condo Ass'n, Inc*, 76 Conn App 306, 323-324; 819 A2d 844 (2003) (explaining that the undertaking of maintenance by a condominium association "is consistent with the traditional landlord-tenant relationship"); *Lloyd v Pier West Prop*

13

*Coop, Inc*, 336 Mich App 616, 631; 971 NW2d 716 (2021) (explaining that a resident's "purchase of a membership in the cooperative entitled her to occupy her townhome and entitled her to use the common areas of the cooperative as long as she paid the required monthly fees and complied with the rules of the cooperative. Plaintiff was thus in a business relationship with the cooperative in which she purchased certain rights of occupancy from the cooperative by buying a membership in the cooperative").[7]

---

*Owners Ass'n*, 2015 Ark App 487; 470 SW3d 293, 299 (2015) ("[A] condominium association may be held to the landlord standard of care as to common areas under its control.").

Even when our sister courts have *not* adopted a framework that compares a condominium association and condominium co-owners to a landlord-tenant relationship, those courts have still found that condominium co-owners are owed a duty of care under a theory of premises liability. See, e.g., *McDaid v Aztec West Condo Ass'n*, 234 NJ 130, 141-142; 189 A3d 321 (2018) ("Like any premises owner under the common law, a condominium association has a duty to exercise reasonable care to protect the condominium's residents from a dangerous condition on property within the ambit of the common elements."); *Hurst v Carriage House West Condo Owners Ass'n, Inc*, 2017-Ohio-9236, ¶ 11; 102 NE3d 1071 (Ohio App, 2017) ("An owner of a unit in a condominium complex is generally considered to be a business invitee in relation to a homeowners' association that controls the common areas of the complex. . . . Typically, therefore, appellees would owe business invitees a duty of ordinary care . . . .").

The dissent dismisses our consideration of these persuasive decisions and explains that if plaintiff had filed this cause of action in all but one of these jurisdictions, the complaint would have been summarily dismissed. But the dissent is answering a much broader question than we purport to. At no point does this Court opine on the merits of plaintiff's claim or what the result in this case ought to be. We merely assert that plaintiff can maintain a premises-liability cause of action. We see no reason to opine on how this case should conclude before it even proceeds.

[7] We agree with *Jeffrey-Moise* to the extent that the panel concluded that where a resident is in a business relationship with the land possessor, see *Stitt*, 462 Mich at 597, the resident is properly classified as an invitee, rather than a licensee.

14

In so holding, we overturn the Court of Appeals decision in *Francescutti*. The *Francescutti* Court erred by centering its holding on the phrase "the land of another." *Francescutti*, 312 Mich App at 643. Admittedly, *Stitt*, on which *Francescutti* relied, used the phrase "the land of another" when defining licensees and invitees. See *Stitt*, 462 Mich at 596-597 (noting that a "licensee" enters "the land of another by virtue of the possessor's consent," and an "invitee" " 'enters upon the land of another upon an invitation' "). However, the phrase "the land of another" does not necessarily equate to "the land of another *owner*." Instead, the "land of another" phrase easily aligns with our decisions that explain that to sustain a premises-liability case, the land on which a person is injured is land over which another person or entity has possession and control. See *Kubczak*, 456 Mich at 660 ("Premises liability is conditioned upon the presence of possession and control, not necessarily ownership.") (quotation marks and citation omitted). We acknowledge that caselaw may sometimes reference a "landowner," given that premises-liability cases often arise in the context of a person injured on land that the person does not own. However, we have explained that land ownership is not dispositive to the inquiry. *Id*. We take this opportunity to clarify, once more, that the proper inquiry when considering the duty owed in a premises-liability context is who holds possession and control over the land where a person was injured and not merely who owned the land.[8]

---

[8] The dissent explains that many people would be surprised to learn that condominium co-owners are afforded the highest level of protection under premises-liability law, even when they fall on their own property. We disagree. We believe that the people of Michigan would reasonably expect that a condominium association, which typically receives a homeowners' association fee from the condominium co-owners and has exclusive possession and control over the common areas, might exercise reasonable care in ensuring

15

## IV. CONCLUSION

We conclude that the Court of Appeals erred by holding that plaintiffs could not maintain a premises-liability action against defendant. Under these circumstances, we hold that plaintiff was an invitee when he entered the condominium's common area and that defendant owed him a duty to exercise reasonable care to protect him from dangerous conditions on the land. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

that those common areas are safe to the same extent that they expect such behavior from any other person or entity with exclusive possession and control over land.

16

STATE OF MICHIGAN

SUPREME COURT

DAOUD MOUSA JANINI and FERYAL
JANINI,

        Plaintiffs-Appellants,

v                                                                                          No. 164158

LONDON TOWNHOUSES
CONDOMINIUM ASSOCIATION,

        Defendant-Appellee,
and

JAMES PYDA,

        Defendant.

---

ZAHRA, J. (*dissenting*).

In this case, the Court requested supplemental briefing and oral argument to consider the Court of Appeals' decision in *Francescutti v Fox Chase Condo Ass'n*.[1] The *Francescutti* panel held that, under the Condominium Act,[2] a person who "owns a condominium unit within the condominium project," i.e., "a co-owner,"[3] while on the

---

[1] *Francescutti v Fox Chase Condo Ass'n*, 312 Mich App 640; 886 NW2d 891 (2015).

[2] MCL 559.101 *et seq*.

[3] MCL 559.106(1) defines a condominium "co-owner" as "a person, firm, corporation, partnership, association, trust, or other legal entity or any combination of those entities, who owns a condominium unit within the condominium project."

general common elements of the condominium project,[4] is neither a licensee nor an invitee under Michigan common law because the co-owner is an owner, in part, of the property. The majority opinion rejects the holding of *Francescutti* and concludes that plaintiff co-owner[5] in this case is an invitee owed the highest duty a possessor of land can owe to someone on that land. Contrary to the conclusion of my colleagues, I would not disturb the *Francescutti* panel's holding that plaintiff is not a common-law invitee, licensee, or trespasser while on the general common elements of the condominium project. Considering the expansion of premises liability occasioned by our decision last term in *Kandil-Elsayed v F & E Oil, Inc*,[6] now is not the time to recognize a new category of premises-liability claims. As a result, I respectfully dissent and would leave it to the Legislature to sort out the competing interests in this complex area of the law.

The legal relationship between a co-owner and their condominium association is governed by statute, i.e., the Condominium Act, and the association's bylaws, which are

---

[4] " 'Common elements' means the portions of the condominium project other than the condominium units." MCL 559.103(7). " 'General common elements' means the common elements other than the limited common elements," MCL 559.106(5), which are ostensibly the portions of the condominium project at issue in this case.

A condominium project may also include "limited common elements"; that term refers to "a portion of the common elements reserved in the master deed for the exclusive use of less than all of the co-owners." MCL 559.107(2). This case does not involve any limited common elements of the condominium project, and the majority opinion seemingly would not extend invitee status to condominium co-owners not actually invited onto the limited common elements given that they are for the exclusive use of less than all of the co-owners.

[5] Plaintiff Feryal Janini's claim is a derivative loss-of-consortium claim. Therefore, this opinion will refer to plaintiff Daoud Janini as "plaintiff."

[6] *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023).

2

permitted under the Condominium Act. Under the act, a co-owner's right to legal action against the condominium association is limited to one for injunctive relief; the statute does not provide for "damages" against the association. A co-owner may also plead a breach-of-contract claim against the association.[7] But plaintiff's claim in this matter is not for injunctive relief or breach of contract.

The word "condominium" is derived from a Latin compound meaning "joint dominion,"[8] and the concept of joint ownership and communal living has deep historical roots; yet, this form of real property ownership is foreign to Michigan common law.[9] Consider that, in 1964, the Michigan State Bar Journal published an article, "Condominium in Michigan," with the following introduction:

> Condominium is not a new form of birth control, nor is it a new building material. It is the greatest boon to the real estate business in the State of Michigan since the advent of the [Federal Housing Act].[10]

The author's humor was not remarkable, but to the author's credit, condominiums are now ubiquitous in this state. The article explains, "Condominium came to the United States from Puerto Rico which enacted enabling legislation in 1958," but none of the states

---

[7] See *Francescutti*, 312 Mich App at 644.

[8] *Merriam-Webster's Collegiate Dictionary* (11th ed).

[9] "It is believed that some type of communal living analogous to condominiums existed even in Roman times. However, the first formal outline of condominium ownership was in the Code Napoleon of 1804, Article 664, which formally addressed issues of separate and common elements now so inherent in this type of real property ownership." Nichols, *Time For an Overhaul of the Michigan Condominium Act?*, 93 Mich B J 22, 22 (July 2014), citing Levin, *Condo Developers and Fiduciary Duties: An Unlikely Pairing?*, 24 Loyola Consumer L R 197 (2011).

[10] Beresford, *Condominium in Michigan*, Mich St B J, Vol. 43, No. 10 (1964), p 13.

adopted condominium laws "until after the enactment of section 234 of the Federal Housing Act in 1961, which made possible federal insurance of mortgages on individual 'family units' in a multi-family structure . . . ."[11]  The article highlights that Michigan borrowed from this legislation when enacting its first condominium statute, the Horizontal Real Property Act, 229 PA 1963, which became effective on May 23, 1963.[12]  Later, our Legislature enacted the Condominium Act.[13]

Before the Legislature enacted the Horizontal Real Property Act and introduced the condominium to Michigan in 1964, the word "condominium" had never been mentioned in a published case.  The first published case to include the word "condominium" was decided in 1968,[14] several years after the current Michigan Constitution was approved by voters in 1963, which provides the current basis for Michigan common law.[15]  Then, as now, it has generally been accepted that "[a] condominium is an estate in real property and a form of property ownership created by statute, and that did not exist at common law."[16]

The relationship between a condominium co-owner and their condominium association has always been and should remain the product of statutory law, which allows

---

[11] *Id.*

[12] *Id.*

[13] 1978 PA 59.

[14] See *Aetna Mtg Co v Dembs*, 13 Mich App 686, 688; 164 NW2d 771 (1968).

[15] Const 1963, art III, § 7 provides that "[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

[16] 31 CJS, Estates, § 223, p 238.

4

for myriad association bylaws that the condominium project's co-owners must accept and follow.

Common law has long been defined as

[t]he body of law derived from judicial decisions, rather than from statutes or constitutions . . . .

"Historically, [the common law] is made quite differently from the Continental code. The code precedes judgments; the common law follows them. The code articulates in chapters, sections, and paragraphs the rules in accordance with which judgments are given. The common law on the other hand is inarticulate until it is expressed in a judgment. Where the code governs, it is the judge's duty to ascertain the law from the words which the code uses. Where the common law governs, the judge, in what is now the forgotten past, decided the case in accordance with morality and custom and later judges followed his decision. They did not do so by construing the words of his judgment. They looked for the reason which had made him decide the case the way he did, the *ratio decidendi* as it came to be called. Thus it was the principle of the case, not the words, which went into the common law. So historically the common law is much less fettering than a code." Patrick Devlin, *The Judge* 177 (1979).[17]

"This Court is the principal steward of Michigan's common law."[18]

[A]lteration of the common law should be approached cautiously with the fullest consideration of public policy and should not occur through sudden departure from longstanding legal rules. *Henry* [*v Dow Chem Co*], 473 Mich [63, 83; 701 NW2d 684 (2005)] ("[O]ur common-law jurisprudence has been guided by a number of prudential principles. See Young, *A judicial traditionalist confronts the common law*, 8 Texas Rev L & Pol 299, 305-310 (2004). Among them has been our attempt to 'avoid capricious departures

---

[17] *Black's Law Dictionary* (11th ed).

[18] *Henry v Dow Chem Co*, 473 Mich 63, 83; 701 NW2d 684 (2005). See also *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 243; 828 NW2d 660 (2013).

5

from bedrock legal rules as such tectonic shifts might produce unforeseen and undesirable consequences,' *id*. at 307 . . . .”); see also *Woodman* [*v Kera LLC*, 486 Mich 228, 231; 785 NW2d 1 (2010)] (opinion by YOUNG, J.) (“[M]odifications [of the common law] should be made with the utmost caution because it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule.”); *id*. at 268 (MARKMAN, J., concurring in part and dissenting in part) (explaining that the common law develops incrementally); *North Ottawa* [*Community Hosp v Kieft*, 457 Mich 394, 403 n 9; 578 NW2d 267 (1998)] (providing that common law should only be changed “in the proper case”).[19]

Therefore, “when it comes to alteration of the common law, the traditional rule must prevail absent compelling reasons for change. This approach ensures continuity and stability in the law.”[20]

There can be no question that there has never been any Michigan common law that defined the relationship between a condominium co-owner and their condominium association. The majority opinion admits that “the relationship between a condominium association and a condominium co-owner *had not before been defined by the common law*” and then “appl[ies] pre-existing principles regarding the duties of those with possession and control over land to a new circumstance.”[21] In other words, the majority opinion applies pre-existing principles, which are common-law principles, to define the relationship between a co-owner and a condominium association. Contrary to the majority’s claim, its opinion is unquestionably a creation or modification of the common law for the simple reason that this form of property ownership was created by statute and

---

[19] *Price*, 493 Mich at 259.

[20] *Id*. at 260.

[21] Emphasis added.

6

did not exist at common law.[22] The Legislature could not have acted in derogation of the common law when legislating the relationship between a co-owner and an association because condominium ownership has no basis in common law.

I agree with the majority opinion that the condominium association is a separate legal entity that is capable of being sued. However, the majority opinion omits that the operative portion of the Condominium Act, MCL 559.207, carefully delineates the type of action that a co-owner may bring against an association. It provides:

> A co-owner may maintain an action against the association of co-owners and its officers and directors to compel these persons to enforce the terms and provisions of the condominium documents. In such a proceeding, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent that the condominium documents expressly so provide. A co-owner may maintain an action against any other co-owner for injunctive relief or for damages or any combination thereof for noncompliance with the terms and provisions of the condominium documents or this act.

The above text makes very clear that a condominium co-owner may maintain an action to "compel" and "enforce" the terms and provisions of the condominium documents. Damages are not included as a remedy for this action. Indeed, this omission was clearly intentional, given that the statute does provide a co-owner with an "*action against any other co-owner for injunctive relief or for damages*."[23] MCL 559.207, however, unquestionably limits a co-owner's action against the association to injunctive relief.[24]

---

[22] 31 CJS, Estates, § 223, p 238.

[23] Emphasis added.

[24] The majority opinion does not accurately portray my reliance on MCL 559.207. My interpretation is not predicated on the proposition that "MCL 559.207 does not expressly use the word 'damages' in describing permissible relief between a condominium association and a condominium co-owner . . . ." Rather, the interpretive point is that

7

Further, MCL 559.207 is significant in that it illuminates the association's duty to maintain the premises. It would be ill-advised for a co-owner to file an action for injunctive relief merely because the co-owner is dissatisfied with the association's response to a snowfall. This provision is generally intended to allow for injunctive relief in response to an association's failure to fulfill its duties under the statute or the association's bylaws, such as an association's ongoing failure to maintain the general common elements.[25]

---

because MCL 559.207 does allow for "damages" when a co-owner sues another co-owner, it is clear that the Legislature *intentionally* omitted damages as a remedy in an action brought by a co-owner against the association.

[25] The majority opinion also points to MCL 559.215(1), which states: "A person or association of co-owners adversely affected by a violation of or failure to comply with this act, rules promulgated under this act, or any provision of an agreement or a master deed may bring an action for relief in a court of competent jurisdiction. The court may award costs to the prevailing party."

MCL 559.215(1) is not applicable in this case. This provision contemplates an action by a "person" or an association. A "person" is not a "co-owner" as defined by the Condominium Act. Compare MCL 559.106(1) (defining a "co-owner" as, among other things, a legal entity who owns a condominium unit within the condominium project) and MCL 559.109(2) (defining a "person" as "an individual, firm, corporation, . . . or other legal entity"). Because MCL 559.215(1) specifies that a "person" may bring the action described against a condominium association, it is likely that this provision is intended to protect condominium purchasers.

Along these lines, I tend to agree with Judge Rudy Nichols, see note 9 of this opinion, that the Legislature should take some action to clarify the Condominium Act. He observed:

A look at the act can be daunting. The act begins with a series of definitions and then identifies the types of condominiums and projects (*expandable*, *contractible*, *leasehold*, etc.); defines the nature of an owner's interest; establishes the creation or development of easements, restrictions, and improvements and an advisory committee of nondevelopers; establishes certain mandatory bylaw provisions; provides for the sharing of common expenses; and otherwise establishes scores upon scores of rules and

8

The majority opinion thwarts the applicable statutory provisions by attempting to saddle condominium associations with a common-law duty to their co-owners. Even more unsettling is the seemingly unjustified decision to deem a condominium co-owner " 'entitled to the highest level of protection under premises liability law.' " In response to my critique of this decision, the majority opinion asserts that had "the Legislature wished to immunize condominium associations from tort liability, they could have said so." My opinion, however, does not suggest that the Legislature wished to immunize condominium associations from all tort liability. Rather, the Legislature intended to limit the actions that a condominium co-owner may bring against an association. Co-owners agree to this restriction when voluntarily purchasing a real estate interest in a condominium unit. The Condominium Act does not address the association's liability to those who have not agreed to be a co-owner in a condominium project, and common-law negligence principles apply to persons other than co-owners who enter onto the land of another who is in possession and control.

---

regulations pertaining to conveying, amending, enforcing, assessing, selling, voting, terminating, and financing the condominium association and its units.

The use of "scores" in the previous paragraph—in the sense of grouping a number of items—is an appropriate one. Unlike the Uniform Condominium Act and the Uniform Commercial Code, which are each neatly divided into a series of articles, Michigan's Condominium Act as amended is a hodgepodge of rules and regulations, each affecting in some way the creation, maintenance, and termination of condominium interests. The act is neither clearly written nor organized. [*Time for an Overhaul*, 93 Mich B J at 23.]

These common-sense revisions would certainly clarify the scope of the various actions contemplated within the Act.

The majority opinion provides co-owners the "highest level of protection" on the dubious assertion "that the relationship between a condominium association and a condominium co-owner is *similar* to the special relationship between a land possessor and its guests."[26]

The majority opinion takes a facile approach by pigeonholing co-owners as tenants on the basis of mere similarities. There is little justification for classifying a condominium co-owner as an invitee as to the general common elements of the condominium project.[27] Moreover, unlike a tenant, a co-owner has a pecuniary interest in the property. This is an important distinction. The underlying economic rationale of tort law is the allocation of risk. There is no risk to be allocated when the property owner and the party injured by a dangerous condition on the property are one and the same. While the presence of multiple owners of the property in question changes the equation, the injured fractional owner

---

[26] Emphasis added.

[27] The majority opinion at least acknowledges "the lack of a perfect pre-existing analogy between condominium relationships and those reflected in the traditional premises-liability framework . . . ." Yet the majority still does not bolster its argument that Michigan's common law, in the absence of a directive in the Condominium Act, imposes a duty on condominium associations to act as landlords. Rather, the majority opinion obfuscates the issue, claiming that it makes more sense to treat a condominium association as a landlord than to "impose no duty at all." Of course, my opinion never suggests that a condominium association has no duty to condominium co-owners. The Condominium Act and the association's bylaws obviously define the association's duties with respect to co-owners. The majority simply does not accept that these duties cannot be enforced without an action that includes damages as a remedy, so it readily supplies this remedy under the guise of the common law. In doing so, the majority imposes its own policy preference to reach its desired result.

10

should bear a burden of risk that is greater than that of a tenant. And unlike a landlord, a condominium association is a nonprofit entity with no pecuniary interest in the property.[28]

Instead of relying on the hallmarks of an invitee relationship, i.e., an invitation and the presence of a possessor's pecuniary interest, the majority opinion supports its position by asserting that "many of our sister courts have made similar observations." Simply compiling observations from other state courts, many of which cite one another for the

---

[28] The majority opinion barely engages in discussion of whether a condominium co-owner may be a licensee rather than an invitee. Yet, if the common-law framework were to apply here, there is as much or more justification for classifying a condominium co-owner as a licensee of the general common elements of the condominium project as there is to classify the co-owner as an invitee. In *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 604; 614 NW2d 88 (2000), we held that in determining what circumstances create invitee status, "the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status[.]" We explained that "the imposition of additional expense and effort by the landowner, requiring the landowner to inspect the premises and make them safe for visitors, must be directly tied to the owner's commercial business interests. It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty." *Id*. Finally, we concluded that "the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. . . . In order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose." *Id*. Because the association does not have a pecuniary interest in the property, a co-owner's legal status appears very similar to the characteristics of a licensee. See *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347, 359-360; 415 NW2d 178 (1987) ("A licensee enters the premises not by invitation, but by permission of the owner or occupant. The licensee's presence is permitted by the possessor of the land, but is not related to the 'purpose or interest of the possessor of the land.' "), citing Prosser & Keeton, Torts (5th ed), § 60, p 412. The majority opinion's attempt to analogize a condominium association to a cooperative is misguided. Unlike a condominium association and a condominium co-owner, the business relationship between a cooperative and its members involves a pecuniary interest. Specifically, "the term 'cooperative plan' shall be deemed to mean a mode of operation whereby the earnings of the corporation are distributed on the basis of, or in proportion to, the value of property bought from or sold to shareholders and/or members or other persons, or labor performed for, or services rendered to, or by the corporation[.]" MCL 450.99. No such pecuniary interest exists between a condominium association and a condominium co-owner.

same proposition, hardly fulfills this Court's role as "the principal steward of Michigan's common law[.]"[29]  "Our role [as principal steward] is 'to determine which common-law rules best serve the interests of Michigan citizens.' "[30]  "More particularly, our role . . . is to determine the 'prevailing customs and practices of the people' in this state."[31]  Indeed, this Court has acknowledged the prudential principle that we must "exercise caution and . . . defer to the Legislature when called upon to make a new and potentially societally dislocating change to the common law."[32]

In listing the cases it relies upon, the majority opinion conveniently ignores that all but one[33] of these jurisdictions has retained a limited duty in which a plaintiff must avoid

---

[29] *Price*, 493 Mich at 258 (quotation marks and citation omitted).

[30] *People v Woolfolk*, 497 Mich 23, 26; 857 NW2d 524 (2014), quoting *Stitt*, 462 Mich at 607.

[31] *Id*., quoting *Woodman v Kera LLC*, 486 Mich 228, 278; 785 NW2d 1 (2010) (MARKMAN, J., concurring in part and dissenting in part).

[32] *Woodman*, 486 Mich at 245 (opinion by YOUNG, J.), quoting *Henry*, 473 Mich at 89.

[33] The Arizona Supreme Court has explained that if a condominium association "owes no duty of care over the common areas of the property, no one does because no one else possesses the ability to cure defects in the common area." *Martinez v Woodmar IV Condos Homeowners Ass'n, Inc*, 189 Ariz 206, 209; 941 P2d 218 (1997).  With the exception of the city of Flagstaff, the most populous areas of Arizona, a state situated well below the 42nd parallel, of course, face fewer open and obvious dangers related to the accumulation of ice and snow.

The other cited jurisdictions have an open and obvious rule, including California, *Krongos v Pacific Gas & Electric Co*, 7 Cal App 4th 387, 393; 9 Cal Rptr 2d 124 (1992) ("Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition."); Arkansas, *Rodriguez v Chakka*, 2024 Ark App 224, 24; ___ SW3d ___ (2024) ("In Arkansas, the only recognized exception to the open-and-obvious-danger rule is when a business invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job."); New Jersey, *Mathews v University*

12

open and obvious dangerous conditions. The open and obvious danger doctrine in these states effectively requires that a plaintiff not know or have reason to know of the danger. Stated differently, had this case been filed in all but one of the states the majority opinion relies on, it would have been summarily dismissed.[34]

Moreover, other states' common-law principles are irrelevant to Michigan statutory law. The majority opinion posits no "prevailing customs and practices of the people" to justify expanding Michigan's common-law principles defining a landlord-tenant relationship to the relationship held between condominium co-owners and their

---

*Loft Co*, 387 NJ Super 349; 903 A2d 1120 (App Div, 2006); and Ohio, *Armstrong v Best Buy Co, Inc*, 99 Ohio St 3d 79, 82; 2003-Ohio-2573; 788 NE2d 1088 (2003) (Generally, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.").

And while Connecticut does not have an open and obvious danger rule, the Connecticut Supreme Court has adopted a limited "natural accumulations" doctrine that would likewise require summary dismissal of the instant case:

> We believe that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical. [*Kraus v Newton*, 211 Conn 191, 197-198; 558 A2d 240 (1989).]

[34] Contrary to the majority opinion, I have not dismissed the caselaw that it relies on from other jurisdictions but have only highlighted that these jurisdictions have retained common-law principles that a majority of this Court has recently jettisoned. See *Kandil-Elsayed*, 512 Mich 95. By simply cherry-picking common-law principles of the jurisdictions that support its desired result, the majority opinion fails to "exercise caution" before making "a new and potentially societally dislocating change to the common law." *Woodman*, 486 Mich at 245 (opinion by YOUNG, J.), quoting *Henry*, 473 Mich at 89.

condominium associations. In my view, many prospective condominium co-owners would not purchase their units if informed that they will be liable for the failure of their fellow co-owners to avoid open and obvious dangers in the general common elements of the development. And many citizens would be surprised to learn that the "prevailing customs and practices of the people" provide co-owners with "the highest level of protection under premises liability law," even when they fall on their own property because they failed to avoid an open and obvious danger.[35]

For these reasons, I dissent. I would affirm the Court of Appeals' holding in *Francescutti* to the extent that a co-owner is neither a licensee nor an invitee.[36] I would remand this case to the trial court to determine whether any duty is owed to plaintiff by defendant under the Condominium Act or defendant's bylaws.

Brian K. Zahra
David F. Viviano

---

[35] See *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted).

[36] *Francescutti*, 312 Mich App at 642-643.

14